### MASSACHUSETTS INSTITUTE OF TECHNOLOGY *vs.* ATTORNEY GENERAL & others.

Suffolk.   January 21, 22, 1920. — March 22, 1920.

Present: DE COURCY, PIERCE, CARROLL, & JENNEY, JJ.

*Devise and Legacy.   Trust,* Charitable.   *Perpetuities, Rule against.   Executor and Administrator.   Massachusetts Institute of Technology.*

A testator, after bequeathing an annuity to his step-mother and certain personal effects to a friend, devised and bequeathed the residue of his property to trustees, who were the same persons as his executors, to invest, reinvest and hold for a period not exceeding twenty-one years after his decease, adding income to principal until the fund should amount to the net sum of $750,000, and, at the expiration of twenty-one years after the time of his decease, or sooner, should the accumulated fund amount to the net sum of $750,000, then and in either event to pay over the entire net accumulated fund to the Massachusetts Institute of Technology for the purpose of founding and endowing a department of naval architecture and marine engineering to be called "Pratt School of Naval Architecture and Marine Engineering," "upon the express trust and condition" that, upon payment of the fund by the trustees to the Institute, it "shall forthwith erect upon its lands" a building, to be approved by the trustees, using such

portion of the fund for that purpose as might be necessary, the remainder of the fund to be held by the Institute "in trust forever, and the income therefrom is to be applied and used for the support and maintenance of said 'Pratt School,' and said 'Pratt School' is to be forever devoted to the education and training of such young men of all classes in life as may seek instruction in naval architecture and marine insurance." *Held,* that

(1) The trust estate vested in the Institute with the receipt of the fund;

(2) The direction or condition that the building should be erected forthwith by the Institute after the receipt of the fund was a requirement that it should be erected within a reasonable time, having regard to the circumstances;

(3) The erection of a building, during the World War, such as the state of development of naval architecture and marine engineering demanded, would have required an expenditure of money entirely disproportionate to the fund, and would have left an income inadequate to maintain the building or the school;

(4) The legal title and the equitable title came into existence at once on the death of the testator, subject to the administration of the estate and the accumulation of principal and income to the net amount of $750,000 within twenty-one years;

(5) The entire residue of the estate, that is, all the estate except so much as was needed to be set apart to insure the payment of the life interest and the annuities, formed a trust for charitable uses, subject to be divested if the principal and accumulated income did not amount to $750,000 on or before the expiration of twenty-one years;

(6) The fund which was formed was not limited upon a life estate, but was all the rest and residue of property owned by the testator, some of which was subject to the life interests of individuals;

(7) The provisions of the will constituted, not a gift to an individual to be followed by a remote gift to a charity, but an immediate gift of a legal interest to be held on a charitable trust.

The will above described also contained a provision that "said building shall have suitably inscribed upon its outer walls the name 'Pratt School of Naval Architecture and Marine Engineering' and that a suitable bronze tablet bearing the inscription 'Presented by Charles Herbert Pratt to the loving memory of Eleazer Franklin Pratt, Catherine Blake Pratt and Franklin Stetson Pratt,' be erected in some appropriate place in the interior of said building." *Held,* that the direction to erect a memorial of bronze in the interior of the building was a mere incident in the construction of the building; and the testator's motive to commemorate himself and family did not prevent the main purpose from being charitable.

In a will, from the provisions of which it was clear that the purpose of the testator was to found and endow a school of naval architecture and marine engineering, the only provision touching directly upon the nature of instruction to be given in the school read, "and said 'Pratt School' is to be forever devoted to the education and training of such young men of all classes in life as may seek instruction in naval architecture and marine insurance." *Held,* that it was plain that the word "insurance" was used inadvertently, and should be stricken out.

The next of kin of the testator in the will above described contended that they, and not the Massachusetts Institute of Technology, were entitled to any surplus above $750,000 under the provisions of the will, but it was *held,* that the

manifest intent of the testator was to give the entire rest and residue of his
estate to the charitable purpose defined in the will, subject only to the limita-
tion that it should not be paid until it and the accumulated income reached
the limit set, $750,000, within twenty-one years after his decease.

A trustee, to whom has been devised and bequeathed real and personal property
under a will of which he is also executor, and who is exempt from giving surety
on his bond as trustee and executor, where the will provides that he is not to
transfer the trust property to the beneficiary until it, with accumulations, has
attained a certain amount, may acquire, before the allowance of his final ac-
count as executor, title to the personal property by any notorious act of him-
self as executor showing his election to hold the property thereafter as trustee,
and, if the combined real and personal property then has attained the desig-
nated amount, he may convey the real estate to the beneficiary, who will thereby
acquire a valid title.

BILL IN EQUITY, filed in the Supreme Judicial Court on October
16, 1917, and afterwards amended, for the sale of real estate by
the residuary devisee under the will of Charles Herbert Pratt,
late of Boston.

The fifth clause of the will of Charles Herbert Pratt to which
reference is made therein is as follows:

"Fifth.    All the rest and residue of my property and estate, real,
personal and mixed, wheresoever the same may be situated and
of which I may be possessed, or to which I may in any way be
entitled at the time of my decease, I give, devise and bequeath
unto my trustees hereinafter named, in trust to invest and rein-
vest the same, and to hold the same for a period not exceeding
twenty-one years after the time of my decease, and to keep said
rest, residue and remainder at all times securely invested so as
to yield a regular income, and to add the income therefrom to
the principal annually so as to form a fund which shall accumu-
late until the same shall amount to the net sum of seven hundred
and fifty thousand dollars ($750,000) — and at the expiration of
twenty-one years after the time of my decease, or sooner, should
said accumulated fund amount to the net sum of seven hundred
and fifty thousand dollars ($750,000.) then and in either event I
direct my said trustees to pay over said entire net accumulated
fund to the Massachusetts Institute of Technology, a corporation
legally existing under the laws of this Commonwealth and at the
present time located in the said City of Boston, for the purpose
of founding or endowing in said Institute a department of naval
architecture and marine engineering, the said department to be

forever called 'Pratt School of Naval Architecture and Marine Engineering,' but upon the express trust and condition that said fund shall be used and appropriated by the said Massachusetts Institute of Technology to the said uses and purposes in the following manner, namely: Upon the payment of the said fund by my said Trustees to it, the said Massachusetts Institute of Technology shall forthwith erect upon its lands a substantial building of a kind and appearance and according to plans and specifications to be first approved by my said Trustees, and for that purpose is to be used such portion of said fund as may be necessary; the remainder of said fund is to be held by said corporation in trust forever, and the income therefrom is to be applied and used for the support and maintenance of said 'Pratt School,' and said 'Pratt School' is to be forever devoted to the education and training of such young men of all classes in life as may seek instruction in naval architecture and marine insurance. As it is my wish to perpetuate in some fitting and endearing manner the memory of my beloved father and his family, I direct that said building shall have suitably inscribed upon its outer walls the name 'Pratt School of Naval Architecture and Marine Engineering' and that a suitable bronze tablet bearing the inscription 'Presented by Charles Herbert Pratt to the loving memory of Eleazer Franklin Pratt, Catherine Blake Pratt and Franklin Stetson Pratt,' be erected in some appropriate place in the interior of said building, and it is my further will that should the name 'Pratt School of Naval Architecture and Marine Engineering' be ever in any way changed, said property and trust fund shall revert to my estate and said Institute shall have no further title thereto, and it is my further will that if for any reason the plan I have herein outlined for the erection and maintenance of said Pratt School cannot be carried out in the manner and form stated without the application of the doctrine of *cy pres,* it is my will that the fund herein provided for the founding and endowment of said Pratt School shall revert to my estate."

The court appointed a guardian *ad litem* of persons not ascertained or not in being, who were or might become interested in the subject matter of the suit.

The facts were agreed upon by the parties. The material facts are described in the opinion.

The suit came on to be heard by *De Courcy*, J., and, by agreement of the parties, was reported by him upon the pleadings and the statement of agreed facts for determination by the full court.

*C. F. Choate, Jr.*, (*C. Hunneman & C. P. Curtis, Jr.*, with him,) for the plaintiff.

*W. H. Brown*, (*R. T. Babson* with him,) for the defendants.

PIERCE, J. This is a petition of the Massachusetts Institute of Technology to sell real estate, conveyed to it by trustees appointed under the will of Charles Herbert Pratt, who died on May 7, 1912, testate. His will, on appeal from the Probate Court, after a trial to a jury, was admitted to probate by a decree of the Supreme Judicial Court on January 8, 1915, and the decree was filed in the Probate Court on January 29, 1915. The trustees under the will were duly appointed on February 18, 1915.

By his will the testator directed the payment of his debts and funeral expenses, the erection of a monument over his grave, and the care and maintenance of the monument and grave. He bequeathed an annuity of $400 to his step-mother. He gave his collection of postage stamps to a friend interested in philately. And he gave all the rest and residue of his property "real, personal and mixed" to his trustees, who were the executors of his will.

The will disposed of real and personal property which came from three sources: first, that which belonged to the testator immediately; second, that which came to him from his father, in which his step-mother who survived him was entitled to a life interest in one third; third, that which came from his brother, in which his step-mother had a life interest in $10,000. At the time of the testator's death, on May 7, 1912, the inventory of the special administrator showed the value of the personal property, less the life interest of the step-mother, to be $243,805.49; and the value of the real estate, less the life interest of the step-mother, to be $455,199.96. The executors' inventory, filed on July 29, 1915, showed the value of the personal property, less the life interest of the step-mother, to be $304,922.59; and the value of the real estate, less the life interest of the step-mother, to be $512,067.10; the total value of real and personal property being $816,989.69.

During September or October, 1916, the interest of the step-mother in the properties was released in consideration of a cove-

nant of the Massachusetts Institute of Technology with Mrs. Pratt to pay her an annuity for her natural life, and the transfer to her of certain personal effects, the use of which was bequeathed to her for life by her late husband's will. The Institute of Technology also covenanted to pay certain relatives of the testator during the remainder of their joint lives and the life of the survivor of them the sum of $1,200 per annum. On October 2, 1916, the trustees conveyed the real estate to the Institute of Technology. On October 12, 1916, the executors filed their first and final account. This account, not yet allowed, showed a transfer of personal property of the value of $367,169.90 to themselves as trustees under the will. The trustees filed an account, not yet allowed, on October 12, 1916, beginning September 27, 1916, and ending September 30, 1916, in which they charged themselves with $371,295.48; which is the sum, plus income, less an expense allowance of $577.38, that the executors had transferred to themselves as trustees on September 27, 1916. On October 12, 1916, the trustees transferred the personal property to the Institute of Technology. The entire residue, real and personal property, received from the trustees by the Institute of Technology, was entered on the books of the Institute of Technology as having a value of $935,000.

The defendants contend that the conveyance of the real estate and the transfer of the personal property by the trustees to the plaintiff, were not such transactions of an "entire net accumulated fund" as the testator, by the fifth clause of his will, intended should be formed by the trustees and paid over to the plaintiff when the accumulated fund should amount to $750,000. They argue in support of this position that the value of the real estate alone was less than $750,000, and that the title to the personal property could not be transferred by the executors to themselves as trustees, nor the value of the personal property be added to the value of the real estate to make an aggregate fund of at least $750,000, until the allowance of the executors' account. *Welch* v. *Boston,* 211 Mass. 178, cited by the defendants, the earlier cases which that opinion affirms, and the later cases which follow it, establish beyond the peradventure of doubt that executors are liable to taxation as executors for the amounts given them as trustees until their account as executors, showing a distribu-

tion to themselves as trustees, has been allowed in the Probate Court. They also establish the rule that a surety on an executor's bond is liable on the bond for the acts of the executor until the final account of the executor is allowed in the Probate Court. These cases do not decide that a change in capacity from that of executor to trustee cannot result where, as here, executors and trustees, duly appointed by the Probate Court under a will that exempts "them each as executors and as trustees from giving surety or sureties upon their official bond" have claimed a credit on their executorship account filed in the probate office for a sum held by them as trustees, and have also filed in that office an inventory or account charging themselves with the like amount as trustees. *Newcomb* v. *Williams,* 9 Met. 525, decides that a change in capacity may result when the executor is not required to give a bond, and has shown by any authoritative and notorious act that he has elected to act in the capacity of trustee. See *White* v. *Ditson,* 140 Mass. 351, 354; *Batchelder* v. *Cambridge,* 176 Mass. 384; *Henry* v. *United States,* 251 U. S. 393; *Rhines* v. *Wentworth,* 209 Mass. 585, 588; *Williams* v. *Acton,* 219 Mass. 520.

While the probate of the will was in litigation, the estate increased in value to a sum largely in excess of $750,000. The sole duty of the trustees, under the fifth clause of the will, was to invest and reinvest the rest and residue of the estate until the accumulated fund should amount to the net sum of $750,000, and to pay over the net accumulated fund to the Institute of Technology at the expiration of twenty-one years from the decease of the testator, or sooner, should the accumulated net fund amount to $750,000; otherwise the fund was to revert to the estate of the testator. When the will was finally probated and the trustees appointed under the fifth clause, the value of the rest and residue of the estate exceeded $750,000. The trustees were consequently discharged of the duty of investment and reinvestment, and of sale for the purpose of investing the trust estate until the principal with the income should form a fund to the amount of $750,000, and were required only "to pay over said entire net accumulated fund to the Massachusetts Institute of Technology" when the principal and income should be paid to them by the executors, if the entire rest and residue of the estate then equalled $750,000.

The testator declares that the fund is given to the Massachusetts Institute of Technology "for the purpose of founding or endowing in said Institute a department of naval architecture and marine engineering, the said department to be forever called 'Pratt School of Naval Architecture and Marine Engineering.'" The testator then declares how his purpose to found the department in the Institute shall be worked out, by the provision that the fund shall be held upon the express trust and condition that "upon the payment of the said fund by my said Trustees to it, the said Massachusetts Institute of Technology shall forthwith erect upon its lands a substantial building of a kind and appearance and according to plans and specifications to be first approved by my said Trustees, and for that purpose is to be used such portion of said fund as may be necessary; the remainder of said fund is to be held by said corporation in trust forever, and the income therefrom is to be applied and used for the support and maintenance of said 'Pratt School,' and said 'Pratt School' is to be forever devoted to the education and training of such young men of all classes in life as may seek instruction in naval architecture and marine insurance."

The defendants contend that the provision, that the Institute "shall forthwith erect upon its lands a substantial building of a kind and appearance and according to plans and specifications to be first approved by my said trustees," constitutes a condition which must be performed before that part of the fund which shall be unexpended at the completion of the building vests in the Institute as a trust fund for the support and maintenance of the Pratt School. We think the Institute of Technology took the entire fund under a charitable trust for the purpose of founding and endowing the Pratt School; that the trust estate vested in it with the receipt of the fund, and did not depend for its existence upon the erection of the building within which the school or department was to be maintained. We also are of opinion that the direction or condition, that the building should be erected forthwith by the petitioner after the receipt of the residue or accumulated fund, is a requirement that it should be erected within a reasonable time, having regard to the circumstances and in particular to the declared purpose of the testator to found and endow a school or department with a home in a building which the tes-

tator directed to be erected for that use and purpose. The circumstances of the case indicate plainly enough that during the war, regardless of the prohibition of the war board, the erection of a building such as the then state of development of naval architecture and marine engineering demanded would have required an expenditure of money entirely disproportionate to the fund, and would have left an income inadequate to maintain the building or the school.

The defendants further contend that the testator's plan is void for remoteness and "violates the rule against perpetuities," in that there is a life estate outstanding which is a charge on the whole estate; because under the provision of the will the fund might not be paid over until twenty-one years after the death of the testator; because the fund for the maintenance of the school cannot be formed or vest until the erection of the building; and because the direction as to the erection of a suitable bronze tablet in some appropriate place in the interior of the building does not have to do with the construction of the building, is to be set up indefinitely as to time after the building is erected, is not for any charitable purpose but is a "pure memorial" which will require the expenditure of an indefinite sum of money which cannot be separated from the rest of the fund.

The trust fund with its accumulation of income, created by the fifth clause of the will, is a trust for charitable purposes; the beneficiaries who are entitled to the equitable interest are young men of all classes in life who may seek instruction in "naval architecture and marine insurance;" the legal title and the equitable title came into existence at once on the death of the testator, subject to the administration of the estate and the accumulation of principal and income to the net amount of $750,000 within twenty-one years. The entire residue of the estate, that is, all the estate except so much as was needed to be set apart to insure the payment of the life interest and the annuities, formed a trust for charitable uses, subject to be divested if the principal and accumulated income did not amount to $750,000 on or before the expiration of twenty-one years. The fund which was formed was not limited upon a life estate, but was all the rest and residue of property owned by the testator, some of which was subject to the life interests of individuals. This is not therefore the case of a

gift to an individual to be followed by a remote gift to a charity, but is an immediate gift of a legal interest to be held on a charitable trust. *Odell* v. *Odell,* 10 Allen, 1, 7. *Codman* v. *Brigham,* 187 Mass. 309, 313. The direction to erect a memorial of bronze in the interior of the building is a mere incident in the construction of the building; and the testator's motive to commemorate himself and family does not prevent the main purpose from being charitable. *Richardson* v. *Essex Institute,* 208 Mass. 311. *Jones* v. *Habersham,* 107 U. S. 174, 189.

The defendants next contend that the testator made an impracticable provision in defining the purposes of his gift to establish or endow a department of naval architecture and marine engineering, because in the only place which says anything about instruction in the school the will reads: "and said 'Pratt School' is to be forever devoted to the education and training of such young men of all classes in life as may seek instruction in naval architecture and marine insurance." Consideration of the declared purpose of the testator and the repeated use in the will of the phrase "Naval Architecture and Marine Engineering" make it very plain that the word "insurance" was inadvertently used and is an obvious misdescription of the word "engineering." It follows that the word "insurance" should be struck out. *Patch* v. *White,* 117 U. S. 210, 217. *Morrell* v. *Morrell,* 7 P. D. 68. *In the Goods of Boehm,* [1891] P. 247. *In the Goods of Schott,* [1901] P. 190. *Polsey* v. *Newton,* 199 Mass. 450.

The defendants finally contend that the heirs and next of kin are entitled to any surplus above $750,000 when that amount was paid over to the plaintiff. As has been said, the rest and residue vested as a charitable trust with the death of the testator. *Williston Seminary* v. *County Commissioners,* 147 Mass. 427. The plaintiff was then entitled under the fifth clause of the will to receive the fund when it reached the limit of $750,000 should it amount to as much within twenty-one years. The right was not affected by the litigation which prevented the trustees from being appointed or from paying over the net accumulated fund to the plaintiff. The manifest intent of the testator was to give the entire rest and residue of his estate to the charitable purpose defined in the fifth clause of the will, subject only to the limitation that it should not be paid until it and the accumulated in-

come reached the limit set within twenty-one years after his decease.

The rights of the parties stand as if the legacy had been paid over when the right to it accrued. "The increase of the fund therefore, whether by the addition of income from its investments, or by their appreciation in value, must result to the benefit of the party entitled to the fund itself." *Baker* v. *Clarke Institution for Deaf Mutes*, 110 Mass. 88, 90. *Fire Insurance Patrol* v. *Boyd*, 120 Penn. St. 624, 646.

A decree, in terms to be settled by a single justice, is to be entered, authorizing the plaintiff to sell and convey the real estate described in the bill.

*Decree accordingly.*