WALTER A. FREDERICH AND LENA FREDERICH, HIS WIFE, PETITIONERS, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MARGARET SWISHER SEEVER, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 112245, 112478.   Promulgated October 27, 1943.

*A. W. Brubaker*, Esq., for the petitioners.
*J. Marvin Kelley*, Esq., for the respondent.

938

940

OPINION.

DISNEY, *Judge*: Prior to the death intestate on January 6, 1934, of Herman Frederich, the partnership conducting the business of Frederich's Market was owned in equal shares by the decedent and his brother Walter. Income tax returns were filed for the taxable years for the estate of the decedent in which a 50 percent share of the profits of the business was reported upon the ground that the estate was a partner. In his determination of the deficiencies, respondent found that the estate of the decedent was not in process of administration during the taxable years, and, accordingly, that the profits attributable to the former interest of the decedent should be reported by his heirs, petitioners herein, one-half by each, including the interest purchased from a half-brother.

Income taxes imposed by Title I of the Revenue Acts of 1936 and 1938 and chapter 1 of the Internal Revenue Code are applicable to "estates of deceased persons during the period of administration or settlement of the estate." Sec. 161 (a) (3). Regulations promulgated under these statutes provide, in part, as follows:

* * * The period of administration or settlement of the estate is the period required by the executor or administrator to perform the ordinary duties pertaining to administration, in particular the collection of assets and the payment of debts and legacies. It is the time actually required for this purpose, whether longer or shorter than the period specified in the local statute for the settlement of estates. * * *

Art. 162–1, Regulations 94 and 101. Prior acts and regulations thereunder contained like provisions. Sec. 219 (a) of the 1918, 1921, 1924, and 1926 Acts; sec. 162 (c) of the 1928, 1932, and 1934 Acts; art. 343,

Regulations 45, 62, 65, and 69; art. 863, Regulations 74 and 77; and art. 162–1, Regulations 86.

The broad difference between the parties is whether the taxable years were a "period of administration or settlement of the estate" within the statutory language. Respondent argues that they were not and that petitioners received the income of the business as tenants in common. Upon brief petitioners contend that administration of the estate was mandatory; that the statutes of Florida place no limitation upon the time for administering an estate after letters are issued; that personal representatives may carry on a trade or business on behalf of an estate; that the County Court found that the partners had an oral agreement for the continuation of the partnership business upon the death of either partner until the business could be liquidated to advantage; that after the death of decedent large sums were required from the business to meet partnership debts and capital expenditures; that any earlier appointment of an administrator, or the timely filing of accounts by him, would not have hastened settlement of the estate of the decedent; and that the orders of the Probate Court fix the property interests of the petitioners and the estate, and are controlling here.

The contention of the respondent is that, since all of the debts of the decedent were paid in 1934 and the assets of the estate were in possession of the surviving partner, leaving nothing for administration except distribution of the partnership interest of the decedent to his heirs, petitioners herein, under his regulations the year 1934 was the time actually required for the collection of assets and payment of debts.

The administrative interpretation of the statute without change during reenactments of the provision by Congress amounts to an implied legislative approval of the regulation. *National Lead Co.* v. *United States*, 252, U. S. 140; *Helvering* v. *Reynolds Tobacco Co.*, 306 U. S. 110.

No case has been called to our attention in which, as here, no personal representative had charge of the estate during a portion of the taxable years. Other proceedings before us, in which personal representatives were functioning during the taxable years involved in the cases, were decided upon the theory that an executor may not unnecessarily delay the closing of an estate. In *J. H. Anderson*, 30 B. T. A. 1275, we said that "There may be cases imaginable where the failure to close the estate is so unnecessary as to be merely capricious and the estate a mere form—a subterfuge for spreading taxes out thinner." Other cases point out that the closing of an estate may not be arbitrarily or capriciously delayed. *First National Bank of Birmingham*, 31 B. T. A. 847; *Estate of Robert W. Harwood*, 46 B. T. A. 750.

Here the petitioners, the only heirs of the estate of the decedent after the purchase by them in May 1934 of the interest of their half-brother, took no steps towards closing the estate from the time of final payment in 1934 of personal debts of the decedent until November 1938, when Frederich applied for letters of administration. In January 1939 he, as administrator, filed an estate tax return showing no tax liability. No further action was taken by Frederich to close the estate until October 1941, two years after the last taxable year involved herein, when he appeared before the probate court to answer an order of the court for an accounting.

During all of this period of inaction on the part of petitioners as heirs, and Frederich, as administrator, to close the estate, the assets of the decedent, consisting entirely of a one-half interest in Frederich's Market, were being managed by Frederich with the assistance of Margaret Swisher Seever as an employee of the business. Nothing remained to be done during that period except to distribute the assets of the estate to petitioners, the only interested parties.

At the hearing had on the order for an accounting, counsel for Frederich, individually, urged that a bookkeeping entry allowing Margaret Swisher Seever her proportionate share of the estate would make possible the immediate closing of the estate. Petitioners now contend that forced liquidation of the business at the time of decedent's death would have resulted in serious loss to the estate and that partnership debts continued in an increasing amount. The liabilities of the business at the close of 1934 to 1936, inclusive, were in round figures $14,600, $9,900, and $30,900, respectively; and the earnings during those years were in the respective amounts of $43,200, $41,200 and $71,200. Those earnings are reflected in inventories in the amount of about $76,000; fixed and other assets in the amount of about $49,000, including an investment of $27,500 in land; withdrawals and advances to petitioners; and charges against the estate of the decedent, adjusted for the small increase in liabilities.

It is obvious from these facts that the earnings were used to expand the business and for investment purposes. No estate tax return was filed by Frederich, as administrator, until fourteen months after the receipt of a written request from an internal revenue agent in charge for the submission of data on estate tax liability of the decedent's estate. As late as April 1940 Frederich was of the opinion that he was not required to complete the administration of the estate. Petitioners had no right to prolong the estate as a separate taxable entity beyond the time allowed by the Federal statute, with or without the advice of personal counsel. There is no evidence that at any time prior to or during the taxable years petitioners endeavored to sell the business or demanded that their share of the estate be distributed to them

in cash. The testimony on the point is merely that Frederich tried to sell the business, the times not being stated, and that Margaret Swisher Seever never agreed to accept her interest in kind. The evidence discloses intent, especially on the part of Frederich, to defer final distribution, for reasons not entirely clear, rather than to close the estate within the time actually required. .

The petitioner urges that the County Judge's Court in Florida has determined that the estate of the deceased partner was in process of administration during the taxable years, and that such determination is conclusive here. We have here simply a question of whether there was, under section 161 (a) (3) of the Revenue Act of 1936 and of the Internal Revenue Code, during the taxable years, a "period of administration or settlement of the estate." If there was, under that section, the estate is separately taxable on its income. The regulations have construed the statute to mean that such period of administration or settlement of the estate is the period required to perform the ordinary duties pertaining to administration, whether such period is longer or shorter than the period specified by local statute; and such regulations, as above seen, have subsisted throughout repeated reenactment of section 161 (a) (3) and therefore should be regarded by us as having the approval of Congress. Congress, in providing for the taxation of estates as such and specifying the period of such taxation, was providing a uniform system of Federal taxation. We have here involved, then, in substance, a Congressional mandate upon a question of uniform system of Federal taxation. Except in so far as the local decision determined the property rights of the heirs; i. e., their respective interests, with which we are not here interested, the decision of the state court did not lay down a local rule of property.

The time required for the performance of the usual administrative duties clearly did not extend into the taxable years here involved. The decedent's debts had been paid within about a year of his decease and no valid reason, such as the litigation found in some cases, appears for the continuation of an administration, even had one been instituted shortly after the death of the deceased. The law of Florida, section 5541 (143) of the Compiled Laws, provides that in case the decedent was a member of a partnership the business and affairs of the partnership shall be wound up without delay, and accounting made to the personal representative; further, that any interest of an estate existing by virtue of partnership between the decedent and others may be sold in the same manner as other property of the estate. In fact, the interest of the minor half-brother was sold, indicating that, so far as necessity of administration is concerned, the interest of the decedent could have been sold in its entirety, the proceeds distributed to the heirs, and the estate closed. Only business reasons are ad-

vocated why this was not done. We think it was Congressional intent to permit the taxation of the estate as such for income tax purposes only within the usually necessary period of administration and that facts indicating the financial wisdom of continuing the estate for the greater benefit of the heirs are not properly to be considered; therefore, that the continuation of an estate in a partnership by order of the Probate Court is not effective upon the question of Federal income taxation. Were this not true, the business exigencies involved could in any case be made to control the matter of Federal income taxation, and might, in some circumstances, be made the means of selection of the year of taxation by the taxpayer. In our opinion, the instant situation is covered by such cases as *Lyeth* v. *Hoey*, 305 U. S. 188; *Burnet* v. *Harmel*, 287 U. S. 103; *Burk-Waggoner Oil Association* v. *Hopkins*, 269 U. S. 110; *Estate of J. P. Armstrong*, 2 T. C. 731. The period of administration may not be unduly prolonged. *J. H. Anderson*, 30 B. T. A. 1275; *Ida Stephenson*, 33 B. T. A. 252. *Effie Reed Buckner*, 45 B. T. A. 544, is not to the contrary and is distinguishable on its facts from the present situation. Our inquiry as to whether a period here involved comes within the intendment of the statute and the regulations so approved by Congress may not, in our opinion, be restricted by local statutes or decisions. We conclude that the decision of the County Judge's Court is not controlling.

Moreover, in our opinion, the two orders of that court upon which reliance is placed do not constitute a holding that the taxable years here involved constituted a period of administration or settlement of the estate. We find no such language therein. One of the orders recites, in substance, that the heirs had managed the estate from death to the date of letters of administration. The other order recites that the partnership had been continued for three years by the heirs and thereafter by the administrator; but, considering the fact that the decedent died in 1934 and the administrator was not appointed until December 21, 1938, we conclude that the court meant to hold that the heirs continued the partnership up to the institution of administration proceedings. This, in our opinion, disposes substantially of the first two taxable years here involved. During that period there was no administration or settlement of the estate as such; and we think a fair interpretation of the orders precludes the idea that the court held that there was such at least prior to the appointment of the administrator.

As to the period after an administrator was appointed, that is, the year 1939, we think the result is not different, for it was not until after the expiration of that year that the administrator approached the Probate Court and secured from it what the court in the order specifies as the necessary authority to continue the partnership. More-

over, the court finds that the surviving partner conducted the business at his peril without having first secured the authority of the Probate Court, and that in the event of a loss or depreciation of the assets of the estate he would have been answerable. Reasonable construction of the general effect of the court's orders indicates to us that the court approved what had been done prior to securing such authority from the Probate Court, because the results had been beneficial; but this is far from a holding that the estate had actually been passing through a period of administration or settlement. That the assets of the estate had been, during the taxable years, embarked in a partnership, with or without the prerequisite of authority from the Probate Court, is, in our opinion, immaterial to the instant question, for it was not Congressional intent that the estate might continue to be taxed for income tax purposes as such during any period, however extended, for which the parties in interest might place it in a partnership. The court denied the surviving partner compensation for management on the ground that he had derived benefit individually. This indicates that the partnership assets were not being managed, in the view of the Probate Court, as assets of an estate. In addition, such partnership is recited by the court to have arisen by virtue of an agreement entered into between the heirs of the decedent and the surviving partner. Such an agreed status does not, in our opinion, come within the Congressional intent as to period of administration or settlement during which an estate may pay income tax as such. Moreover, the finding that the partnership was by virtue of an agreement between the heirs and the surviving partner, together with recitations as to agreement of apportionment between the partners and recitation of the admission of an agreement to continue the estate and partnership, is clear indication that, so far as concerns the court's conclusion that there was a partnership, it is essentially based upon agreement of the parties, and therefore the judgment of the court does not constitute such an adjudication as should be considered binding here.

There was no contest before the Probate Court on the question here involved. The parties were in agreement that there was a partnership and considered the estate to have been a member thereof; and proffered to the court no disagreement on that subject. Logically, therefore, such judgment may not be considered as controlling here. We consider the judgment, as stated in *Freuler* v. *Helvering*, 291 U. S. 35, "collusive in the sense that all the parties joined in a submission of the issues and sought a decision which would adversely affect the Government's right to additional income tax." *Francis Doll*, 2 T. C. 276; *First Mechanics National Bank of Trenton* v. *Commissioner*, 117 Fed. (2d) 127; *Botz* v. *Helvering*, 134 Fed. (2d) 538, affirming 45 B. T. A. 970. In addition, it is worthy of note that the judgment of the Probate Court recited that the status declared for the estate is "the

present status," from which it appears that the order was not in fact intended to encompass a judgement that the estate had properly been in process of administration during 1937, 1938, and 1939, the taxable years here involved, but only to declare the status of the estate in 1941 and 1942, the dates of the two orders relied upon, and to approve the management of the heirs during the earlier period, in effect, because it was beneficial financially. The court, of necessity, viewed the proceeding as it then found it, not what it would have been if its jurisdiction had been invoked in 1934, 1935, or 1936. Its orders must be interpreted in that light. Additional reason thus appears why the judgment may not be accorded conclusive effect here.

In 1939 Frederich withdrew about $146,000 from the business. The court's opinion discloses that the funds were used to improve property adjoining Frederich's Market for the purpose of attracting business to that locality. Withdrawals by Frederich in excess of $15,000 annually were held by the court to constitute distributions in partial liquidation of the estate of the decedent. The capital account of the estate at the close of 1939 was about $134,000. Withdrawal of such an amount then is opposed to the idea that the estate could not have made a final distribution prior to the taxable years, at least by a bookkeeping entry.

In *First National Bank of Birmingham*, 31 B. T. A. 847, *supra*, we said that, "If there were evidence of capricious delay, there would be justification for entertaining the idea of constructive distribution, but such evidence must be more than the executor's tentative report of no claims against the estate." There was such delay here. Frederich, who had possession of the assets of the estate at all times important, manifested no desire to close the estate until directed by a court order to show cause why he should not. The laws of Florida gave the other petitioner, as the remaining heir, the right to an administration under the jurisdiction of the state court. Nothing here is opposed to the assumption that she was not fully aware of the status of the estate and is in no position to complain if she is charged with tax on income which she could have received had she elected to avail herself of the rights given her by the state statute.

In our opinion, the income flowing from the interests of the petitioners is taxable to petitioners.

Under this view of the proceedings it becomes unnecessary for us to pass upon the question of whether Frederich is entitled to a credit for any overpayment of income taxes of the estate of the decedent on account of reporting in returns filed for it 50 percent of the profits of of Frederich's Market instead of 40 percent, the interest of the estate as decided by the state court.

*Decision will be entered under Rule 50.*