MARY DUPONT FAULKNER, PETITIONER, v. COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 1759.  Promulgated July 17, 1944.

*Robert C. McKay, Esq.*, for the petitioner.
*J. D. Durand, Esq.*, for the respondent.

### OPINION.

MELLOTT, *Judge*: The Commissioner determined a deficiency in the income tax of petitioner for the calendar year 1939 in the amount of $78.72. Petitioner claims she has made an overpayment of tax in the amount of $750.80.

The sole question is whether liquidating distributions received by petitioner in 1938 and 1939 were "amounts distributed in complete liquidation" within the meaning of section 115 (c) of the Internal Revenue Code.[1]

The following facts have been stipulated:

1. On or about May 29, 1931 the petitioner purchased 100 shares of The Chesapeake Corporation at a cost of $3,140.00.

2. During the period December 19, 1938 to December 7, 1939, the petitioner received cash and securities in liquidation of The Chesapeake Corporation of a total value of $4,766.50. On December 19, 1939 she sold her 100 shares of stock in The Chesapeake Corporation for $385.99 and reported a long-term capital gain of $2,012.49, one-half of which, or $1,006.25, was taken into account and the amount so taken into account was offset against long-term capital losses of a greater amount. Since December 19, 1939, the petitioner has owned no stock in The Chesapeake Corporation and has received no dividends from said corporation in liquidation or otherwise.

---

[1] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

\* \* \* \* \* \* \*

(c) DISTRIBUTIONS IN LIQUIDATION.—Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. Despite the provisions of section 117, the gain so recognized shall be considered as a short-term capital gain, except in the case of amounts distributed in complete liquidation. For the purpose of the preceding sentence, "complete liquidation" includes any one of a series of distributions made by a corporation in complete cancellation or redemption of all of its stock in accordance with a bona fide plan of liquidation and under which the transfer of the property under the liquidation is to be completed within a time specified in the plan, not exceeding, from the close of the taxable year during which is made the first of the series of distributions under the plan, (1) three years, if the first of such series of distributions is made in a taxable year beginning after December 31, 1937 \* \* \*.

3. On November 28, 1938, the stockholders of The Chesapeake Corporation approved a plan for the complete liquidation of the corporation which provided that the corporation be completely liquidated within three years from December 31, 1938. The first liquidating dividend under this plan was December 19, 1938 and the only dividend paid after December 31, 1939 was in securities and cash of a value of $3.64375 per share paid on July 15, 1942.

We find the facts to be as stipulated and in addition find that approximately 80 percent of the assets of the Chesapeake Corporation were distributed to its stockholders prior to December 31, 1939; that the liquidating receiver was preparing for a final distribution early in 1940 when he was notified of a proposed additional assessment against the corporation of Federal taxes in the amount of $6,712,470, with interest; that due to this proposed additional assessment the receiver was unable to complete the liquidation as contemplated; and that although every reasonable effort was made by him to effect a settlement of the asserted tax liability he was unable to do so until July 10, 1942.

Petitioner's return was filed with the collector of internal revenue for the district of Massachusetts. In the notice of deficiency, issued in February of 1943, the Commissioner determined that petitioner realized a short term capital gain of $1,626.50 in 1939, of which 100 percent is to be taken into account in computing income for that year. Petitioner contends she realized a long term capital gain of $2,012.49, of which 50 percent is to be taken into account in computing income.

The parties agree that if the distributions made by the Chesapeake Corporation in 1938 and 1939 were distributions in "complete liquidation" within the meaning of the statute, the gain realized by petitioner in 1939 from her investment in the stock of the Chesapeake Corporation is taxable as a long term capital gain; if not, the gain resulting from the distributions in 1938 and 1939 is taxable as a short term capital gain.

In support of his determination respondent relies upon certain statements contained in the reports of the congressional committees and in the Congressional Record. They tend to support his view that Congress intended to give corporations three years in which to consummate complete liquidation and that the liquidation should be completed within that period in order for the shareholders to obtain the benefit of the long term capital gain provisions. House Report No. 2475, 74th Cong., 2d sess., p. 10; Senate Report No. 1567, 75th Cong., 3d sess., pp. 7 and 18; and Congressional Record, vol. 83, part 5, p. 4962.

It is a well settled rule of statutory construction that, if the language of a statute is clear, it is conclusive. "There can be no construction where there is nothing to construe." *United States* v. *Hartwell*, 73 U. S. 385, 396; *Scott* v. *Reid*, 10 Peters 524; *Commissioner of Immigration* v. *Gottlieb*, 265 U. S. 310, 313; *Bate Refrigerating Co.* v. *Sulzberger*, 157 U. S. 1; *Hamilton* v. *Rathbone*, 175 U. S. 414, 419; *Thomp-*

*son* v. *United States*, 246 U. S. 547, 551. We are of the opinion this rule is applicable here; for the language of section 115 (c), *supra,* is clear and unambiguous. It provides that a distribution in "complete liquidation" includes any one of a series of distributions made by a corporation in complete cancellation or redemption of its stock in accordance with a bona fide plan of liquidation under which the transfer of the property under the liquidation is to be completed within a time specified in the plan, not exceeding three years from the close of the taxable year during which is made the first of the series of distributions under the plan.

It has been stipulated that the stockholders of the Chesapeake Corporation approved a plan for the complete liquidation of the corporation within three years from December 31, 1938, and that the first distribution under the plan was made on December 19, 1938. There is no suggestion that the plan was not bona fide; and the fact that 80 percent of the assets were distributed by the liquidating receiver within twelve months is convincing evidence that it was. It seems to us that the distributions made in 1938 and 1939 are within the definition of distributions in "complete liquidation" contained in the statute. To hold, as the respondent urges, that a liquidation must be completed within three years after the first distribution is made would require reading into the statute something that is not there. The three-year period was apparently adopted by Congress as a fair measure of the time it should take to complete the liquidation of a corporation and to prevent closely held corporations from distributing their assets over a long period, with a resultant saving in taxes to their stockholders. It is obvious, however, that, if Congress had incorporated in the statute a provision that only distributions in liquidation which were completed within such a three-year period were to be treated as distributions in complete liquidation, uncertainty would have resulted and stockholders receiving liquidating distributions would not be able to determine whether or not they had received distributions in complete liquidation until the three-year period had elapsed. Congress seems to have realized this, for the only requirement of section 115 (c), *supra*, is that there be a bona fide plan under which the transfer of property under the liquidation is to be completed within three years. Cf. *George G. Mason*, 3 T. C. 1087.

In our judgment respondent erred in his determination that the gain realized by petitioner was a short term capital gain, and we so hold. The admissions in the pleadings show that petitioner has made an overpayment in tax. The amount thereof will be computed and,

Reviewed by the Court.

*Decision will be entered under Rule 50.*

DISNEY, *J.*, dissenting: I must dissent from the view adopted by the majority. Section 115 (c) of the revenue code appears to me to contain such ambiguity on this question as to require us to look to the committee reports for light; and when we do examine those reports we find what appears to me to be clear indication of congressional intent to set a definite three-year period for liquidation, contrary to the conclusion reached in the majority opinion. The statutory language is "a bona fide plan of liquidation and under which the transfer of the property under the liquidation is to be completed within a time specified in the plan, not exceeding * * * three years * * *." The legislation was initiated in the Revenue Act of 1936. The report of the Committee on Ways and Means says:

> Section 115 (c) has been revised so as to permit the shareholders (other than corporations) of a corporation which *is* completely liquidated within a 2-year period, to be taxed on the resulting gain under the provisions of section 117 (a). [Italics supplied.]

No mention of this subject is found further in the committee reports covering the Revenue Act of 1936. In 1938 section 115 was amended to provide a three-year period instead of one of two years; and in that connection the report of the Senate Finance Committee uses the following language:

> The reported bill endeavors to encourage the liquidation of both domestic and foreign personal holding companies by expanding the time within which complete liquidation *must* occur to have any resulting gain to shareholders subject only to the capital-gains rate. * * * The committee believes that any corporation should be allowed three years in which to consummate a complete liquidation. * * * Your committee proposes to give all corporations three years in which to consummate a complete liquidation instead of the two years provided for under existing law. Thus, a shareholder may be able to report his profits from liquidation in four taxable periods, if the corporation begins liquidation during one of his taxable years. * * * In respect of foreign personal holding companies, existing law provides that these companies *must* be liquidated before January 1, 1938, in order that their shareholders may receive the benefits of the capital-gains provisions, unless an extension was granted by the Commissioner. * * * The committee proposes, therefore, in the case of these companies, to allow their liquidation on or before June 30, 1939, under the capital-gains provisions of the bill. [Emphasis supplied.]

It is noted that the committee believes that three years should be allowed "to consummate a complete" liquidation. It would appear that consummation and completion so used in connection with "three years" connote a definite limitation upon such completion; also that the word "must" is twice used; first, referring to the time for liquidation in general, and, second, with reference to the former law as to foreign personal holding companies, and that as to such companies a definite date, June 30, 1939, is set on or before which Congress proposes to "allow their liquidation." On the floor of the

Senate, Senator Harrison on this subject said in part: "And we have given them 3 years in which to liquidate. That applies to subsidiaries also." He offered for the record (Congressional Record, p. 4962) the following:

This amendment to section 115 (c) is a clarifying amendment to make certain that the change made in the House bill by the bill as reported, which lengthened by 1 year, as compared with the similar provision of the 1936 act, the period within which a corporate liquidation *must* be completed in order to qualify as a complete liquidation, will apply only to liquidations begun in a taxable year governed by the bill. [Italics supplied.]

Finally, the conference committee had this to say:

Amendment No. 51: In the case of corporations other than foreign personal holding companies, this amendment extends the time within which complete liquidation *must* occur, so as to come within section 115 (c). * * * [Italics supplied.]

In my opinion all of the above clearly indicates that Congress intended a definite three-year limitation, except in the particular case of a foreign personal holding company, as to which a definite date for completion was set, except that, upon a showing of impossibility of completion "due to the laws of the foreign country * * * or for other reason," extension might be secured, but even in that case not beyond six months, from July 1, 1938, to December 31, 1938. Committee reports could hardly be plainer in their indication of congressional intent; and, unless the statute is so clearly unambiguous as to preclude resort to such reports, the provision here involved provides, as to domestic corporations, for a definite three-year period.

"Whether the language of a statute is so plain that there is no room for construction must be determined with reference to the connections, the subject dealt with, and the objects in view." 59 C. J. 955. By such light, unambiguity can not be seen so clearly as to cause us to decline to consider the unambiguous language of the committee reports. *Bona fides* of plan is not the only criterion, for the statute, after providing for such *bona fides*, continues with "and," to provide for transfer thereunder which "is to be completed" within three years. Does this mean merely that the plan should specify a time limit, not mandatory if there was good faith, or did Congress itself require transfer which "is to be completed" within the time limit stated? Surely on this point doubt is left. A California statute provided that a witness false in one part of his testimony "is to be distrusted in others," and it was held that "a thing that is to be must be," so that the expression was found mandatory. *White* v. *Disher*, 7 Pac. 826; *Belm* v. *Patrick*, 293 Pac. 849. Such a case is of course not controlling here, but it seems to emphasize that there is a real question as to the legislative intent in the instant matter.

"* * * the fundamental rule of construction, to which all other rules are subordinate, is that the court shall, by all aids available, ascertain and give effect * * * to the intention or purpose of the legislature as expressed in the statute." 59 C. J. 948, citing *Texas Employers' Ins. Assn.* v. *Tyler*, 283 S. W. 929, and *Ebert* v. *Poston*, 266 S. E. 549. We should in my opinion here consult legislative history; if we do so, a three-year period, definite, is found to be the intent of Congress.

HARRON, *J.*, agrees with this dissent.