WILLIAM C. CHICK, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MABEL C. FOSS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 6067, 6068. Promulgated December 31, 1946.

*Robert A. B. Cook, Esq.*, for the petitioners.
*A. J. McDowell, Esq.*, for the respondent.

OPINION.

BLACK, *Judge*: The respondent concedes that the property has never been transferred from the executor to the trustee; that the executor has never filed his final account with the probate court; and that there has been no distribution of the income in question to the petitioners. However, he takes the position that there was actually no estate in process of administration; that the administration of the estate had been completed prior to the taxable year; that there was no necessity for prolonging it; that there remained only the formality of transferring the assets from the executor to himself as trustee; and that the income falls within section 162 (b) of the Internal Revenue Code,[1] as income currently distributable under the terms of the testamentary trust to the petitioners as beneficiaries, and is therefore taxable to them. In taking this position respondent relies upon section 19.162–1 of Regulations 103, printed in part in the margin.[2] Petitioners, on

---

[1] SEC. 162. NET INCOME.

*   *   *   *   *   *   *

(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the beneficiaries, and the amount of the income collected by a guardian of an infant which is to be held or distributed as the court may direct, but the amount so allowed as a deduction shall be included in computing the net income of the beneficiaries whether distributed to them or not. Any amount allowed as a deduction under this paragraph shall not be allowed as a deduction under subsection (c) of this section in the same or any succeeding taxable year.

[2] The income of an estate of a deceased person, as dealt with in the Internal Revenue Code, is therein described as received by the estate during the period of administration or settlement thereof. The period of administration or settlement of the estate is the period required by the executor or administrator to perform the ordinary duties pertaining to administration, in particular the collection of assets and the payment of debts and legacies.

the other hand, contend that the respondent is without authority to tax the income to anyone other than the estate so long as the estate is in fact still open and in the hands of the executors. They rely upon section 161 (a) of the code, printed in the margin.[3] They further contend that the administration process has not been unreasonably delayed and that the income is taxable to the estate.

When all the facts in the instant case are taken into consideration, we think respondent's determination must be sustained and that petitioners' contentions should be denied. It seems to us that all need for further administration of the estate of Isaac W. Chick ended when the last claim against the estate was settled in 1937. All debts and claims against the estate, with the exception of claims with reference to the Atlantic National Bank stock, had been paid prior to 1937. When this last claim against the estate was settled, we are at a loss to see where there was any reason to prolong the administration any further. We, of course, do not mean to say that the petitioner, as executor of the estate, should have immediately filed his final account as executor in 1937. Naturally, executors are allowed a reasonable time within which to do these things. The Commissioner does not contend otherwise. It was not until 1940, three years after the final claim against the estate had been settled, that the Commissioner determined that there was no further necessity for administration of the estate, that the estate was no longer in process of administration, that the testamentary trust should be considered as having come into being, and that under section 162 (b) the trust income was taxable to petitioners, as the beneficiaries of the trust. It is apparently petitioners' argument that the part of section 19.162–1 of Regulations 103 to which we have referred has no validity when construed as the Commissioner seeks to construe it. As we understand petitioners' argument, it is that only the probate courts of the State of Massachusetts can determine when an administration is closed in the State of Massachusetts, and that it naturally follows that as long as such administration is not closed the estate must be considered "in process of administration," and the income of the estate must be taxed under the Federal statute to the estate and not as the income of the testamen-

It is the time actually required for this purpose, whether longer or shorter than the period specified in the local statute for the settlement of estates. If an executor, who is also named as trustee, fails to obtain his discharge as executor, the period of administration continues up to the time when the duties of administration are complete and he actually assumes his duties as trustee, whether pursuant to an order of the court or not. * * *
[3] SEC. 161. IMPOSITION OF TAX.

(a) APPLICATION OF TAX.—The taxes imposed by this chapter upon individuals shall apply to income of estates or of any kind of property held in trust, including—

(3) Income received by estates of deceased persons during the period of administration or settlement of the estate; * * *

tary trust provided in decedent's will.  If petitioners' position is correct, then it seems to follow that an administration can be prolonged indefinitely in the state courts and long after any need for it exists, and the income of the estate be still taxable to it as a separate entity and not to any testamentary trust provided in the will.  Our Court has not subscribed to that doctrine and in several cases we have given approval to the part of Regulations 103 which is printed in the margin.  See *Walter A. Frederich*, 2 T. C. 936; *Estate of J. P. Armstrong*, 2 T. C. 731; and *Pierce Estates, Inc.*, 3 T. C. 875.  In the *Armstrong* case, in speaking of the same regulation here involved, we said:

> In our opinion, this is not a matter controlled by state decisions, in that it is not a matter of local rules of property, but one where under *Burnet* v. *Harmel*, 287 U. S. 103, we must ascertain criteria for construction of an act of Congress, and if regulations upon the subject are fairly and reasonably within power of the Commissioner, we should look to such regulations.  This is a case of determining whether the facts involved in a will and its probate indicate an "estate" or a "trust" under the Federal statute.  Interpretation therefore should be so as to give "a uniform application to a nation-wide scheme of taxation."  We think that the regulation to the effect, as above seen, that a period of administration or settlement of an estate is the period required to perform the ordinary duties pertaining to an administration, is a valid and reasonable interpretation of the statute on this subject and that since it is plain herein that, the estate having been reduced to possession and the debts of the testator having been paid, many years ago, the "ordinary duties pertaining to administration" have long since been completed, that thereafter for the purpose of the Federal statute the executors should be considered to have continued their activities as trustees, and not longer as executors.  * * *

Petitioners rely strongly on the Fifth Circuit's reversal of our decision in the *Frederich* case.  See *Frederich* v. *Commissioner*, 145 Fed. (2d) 796.  We have carefully read the court's opinion in that case and if it is, as petitioners contend, to be construed as holding that section 19.162–1 of Regulations 103 is invalid as applied to a state of facts such as we have in the instant case, then, with all due respect to the court, we are unable to agree.  It seems to us that the regulation is designed to cover just such a case as we have here, and that the Commissioner has not abused his discretion in applying it.

In addition to arguing that the Commissioner has no authority to enforce such a regulation as he is seeking to enforce here, the petitioners argue, in the alternative, that there were good reasons for keeping open the administration of the estate of Isaac W. Chick through and beyond the taxable year.  These reasons as advanced by petitioners are: The principal asset of the estate was the capital stock of the Pray Co., a corporation engaged in the rug and floor covering and furniture business; the location of the business of this corporation was bad; in 1938 it had to be moved to a better location; and that the move to the new location resulted in the great

economic advantage of the Pray Co. and thereby increased the value of its stock, which was the principal remaining asset of the Isaac W. Chick estate. It is difficult for us to see why petitioner William C. Chick could not have looked after the shares of stock of the Pray Co. and the removal of its business from one location to another just as well in his capacity as testamentary trustee as in his capacity as executor of the estate. As a matter of fact, William C. Chick was the president and a director of the Pray Co. and it is reasonable to assume that what he did in securing a new and better location for the company and otherwise improving its business affairs was done in his capacity as chief executive of the company and not as executor of the estate of Isaac W. Chick. There is nothing in the records to show that any administrative action was required in the moving of the business of the Pray Co. from one location to another. So far as the record shows, the probate court had nothing at all to do with such removal. That was undoubtedly a matter for the directors of the corporation to decide, and doubtless they did decide it.

Another reason urged by petitioners as to why William Chick did not qualify as trustee of the residuary estate and close out the administration of the estate was that he had a spell of serious illness in 1936 and subsequently had some recurrences of such illness and on this account he did not want to assume the duties of trustee of the residuary estate. Petitioner William C. Chick testified that he interviewed certain corporations which were in the business of acting as executors and trustees, but that these corporations declined to act as trustee because the principal asset of the estate was the corporate stock of the Pray Co. and the trustee would have to assume the responsibility of operating the business. Petitioner Chick, when asked at the hearing the following question by respondent's counsel:

Q. Did you consider the expediency of going up to the court and presenting your resignation?

replied:

A. I concluded the answer was no, because if I petitioned the court for appointment as trustee, in other words, if I resigned, the court undoubtedly would have to appoint an individual which I knew the bank wouldn't accept, and that individual would be a total stranger to the family—whether he had any ability to run the business or not is problematical, and I should be in the position of a stranger as trustee operating all the family funds, which might be done in a friendly way, or might be done and liquidated without any consultation with me. [*Sic.*]

We are not strongly impressed with these and other reasons which petitioner Chick gave for not closing out the administration of the estate and setting up the testamentary trust, of which he had already qualified as trustee. We feel that under the evidence we should sustain respondent, and we so hold.

One other question remains to be decided. Under section 115 (c) of the Internal Revenue Code, as applicable to the taxable year 1940, gain resulting to a distributee from the liquidation of a corporation is taxable as a short term capital gain except in cases of distribution made in complete liquidation. The material portion of the statute is set out in the margin.[4] There is no question as to the amount of gain realized by the petitioner in the taxable year. The sole issue is whether the distribution by the corporation was in "complete liquidation" within the meaning of the statute.

On brief, the respondent concedes that the directors' resolution of July 14, 1937, embodies the plan, that under the plan the liquidation was to be completed on or before December 31, 1939, and that the first of the series of distributions made pursuant thereto occurred in 1938. Thus it would appear that the time specified in the plan was well within the period allowed by the statute. Indeed, under the circumstances here, the statute allowed three years, from the close of the taxable year in which the first distribution was made and, as the first distribution was made in 1938, the time set for the completion of the liquidation could have been any date prior to December 31, 1941.

The respondent challenges only the *bona fides* of the plan. He points to the nature of the assets owned by the corporation and to the fact that the plan called for their conversion into cash, and he contends that it can not seriously be asserted that there was any reasonable, bona fide expectation on July 14, 1937, that the corporate assets would be completely disposed of by the time prescribed in the plan and that this is borne out by the fact that the liquidation was not completed until December 31, 1943.

The petitioner was not an officer or director of the company. The stipulation presents no facts bearing directly upon the good faith of the directors of the company in connection with the formulation and approval of the plan for liquidating the concern, nor has the respondent introduced any evidence in that respect. It should be noted that the Commissioner's determination herein antedated our decisions in *Mary Dupont Faulkner*, 3 T. C. 1082, and *George G. Mason*, 3 T. C. 1087, both of which have since been acquiesced in by him. In those cases we held that where distributions were made pursuant to a bona fide plan under which liquidation was to be completed within the

---

[4] SEC. 115. DISTRIBUTION BY CORPORATIONS.

*      *      *      *      *      *      *

(c) DISTRIBUTIONS IN LIQUIDATION.—*  *  *  For the purpose of the preceding sentence, "complete liquidation" includes any one of a series of distributions made by a corporation in complete cancellation or redemption of all of its stock in accordance with a bona fide plan of liquidation and under which the transfer of the property under the liquidation is to be completed within a time specified in the plan, not exceeding, from the close of the taxable year during which is made the first of the series of distributions under the plan, (1) three years, if the first of such series of distributions is made in a taxable year beginning after December 31, 1937, or (2) two years, if the first of such series of distributions was made in a taxable year beginning before January 1, 1938.

*      *      *      *      *      *      *

period allowed by the statute, such distribution was in complete liquidation within the meaning of the statute, even though the corporation had not been completely liquidated within the period so allowed. In the light of that rationale, we think it may not be seriously advocated that the noncompletion of the liquidation process within the time contemplated in the plan or that set forth in the statute, standing alone, warrants a denial of the benefits of the statute on the ground that the plan was not a bona fide one.

On the basis of the stipulated facts, see *Iowa Bridge Co.* v. *Commissioner*, 39 Fed. (2d) 777, we can only conclude that the plan of liquidation was drawn up in good faith by the board of directors of the company and that it was bona fide in every respect. At the time that the plan was approved the company owned approximately 96,000 acres of timberland having a book value of about $338,500; plant and equipment with a book value of approximately $440,000; cash, $587,000; accounts receivable, some $16,000; railroad property, $26,000; logging equipment, $12,000; and other miscellaneous assets totaling about $21,000. Its liabilities were negligible. Apparently the directors saw nothing in the nature of the assets that would preclude their sale and disposition within the two and one-half year period they had decided upon. If there had been real doubt in their minds as to the possibility of completing the process within such time, the way was open to them to take the additional time permissible under the statute. We find nothing to suggest that the plan was not an entirely feasible one at the time of its adoption. Cf. *Charles N. Manning*, 3 T. C. 853. It is true that on December 31, 1939, the corporation had liquidated only about 25 per cent of its assets and also that the secretary of the corporation, in his affidavit, stated that "the liquidation was necessarily slow on account of the nature of the assets." Both of these factors emerge only in the light of actual experience in the liquidation process and reflect not at all on the good faith of the directors or the *bona fides* of the plan at the time of its adoption. There is no evidence that the plan was abandoned or laid aside, but it is indicated that the winding up process might have been slowed down to afford the common shareholders the more advantageous prices resulting from the sale of pine to the new pulp plants which were springing up in the area.

We conclude that the directors of the corporation were entirely reasonable in their expectation at the time of the adoption of the plan that the dead line which they had set would be met. The plan was a bona fide one and the distributions were in "complete liquidation" within the applicable statute.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

ARUNDELL, *J.*, dissenting: I can not agree with the decision of the majority on the first issue, and I therefore respectfully note my dissent.

The question as to whether an estate is being held by the executor or by the same person or persons as trustees under the will of a decedent has been before the courts of Massachusetts a number of times. In *Welch* v. *City of Boston*, 211 Mass. 178; 97 N. E. 893, the executors of an estate determined to distribute to themselves as trustees under the will of their decedent a portion of the property left by him. The trustees opened an inventory of the property transferred in trust and they otherwise accounted for it as property held pursuant to the terms of the trust. As executors, however, they had filed no account in the probate court showing the transfer to the trust or seeking an approval of such transfer. The city of Boston claimed the right to collect a tax upon the whole property from the estate. The court, upon consideration and review of the authorities, held that where a part or the whole of the estate is given to the same person or persons as trustees, who are also the executors, there must not only be some definite, unequivocal, and final act of transfer from the executor to the trustee, but such act, before it could become "authoritative and notorious," had to be shown by an account duly filed and allowed by the probate court. In *Massachusetts Institute of Technology* v. *Attorney General*, 235 Mass. 288; 126 N. E. 521, the Supreme Judicial Court pointed out that *Welch* v. *City of Boston*, *supra*, and the earlier opinions which that decision affirmed and the later cases which follow it, have established beyond the peradventure of a doubt that executors are liable to taxation as executors for the amounts given to them as trustees until their account as executors, showing a distribution to themselves as trustees, has been allowed in the probate court. See also *Donnelly* v. *Levers & Sargent Co.*, 226 Mass. 214; 115 N. E. 252. Hence, under the laws of Massachusetts I think it may not be said that petitioner Chick held the property in a capacity other than that of executor.

Probate and settlement of estates of deceased persons is regarded as being in the nature of a proceeding *in rem*, wholly statutory, and exclusively within the province of the tribunal set up by the state for dealing with such matters, and the Federal courts are without jurisdiction to interfere. *Ellis* v. *Stevens*, 37 Fed. Supp. 488, and authorities there cited. The Supreme Court has pointed out that the problem of whether or not the income of a trust or an estate is currently distributable is a question of local law, *Freuler* v. *Helvering*, 291 U. S. 35, and that the states establish the procedures governing the probate of wills and the processes of administration, *Lyeth* v. *Hoey*, 305 U. S. 188.

Here the income was currently distributable only under the terms of the trust. So long as the property remained in the hands of the executor there was no duty to distribute any of the income to either of the petitioners herein. It would be taxable to the estate under section 161(a)(3) unless distributions were actually made, giving rise to deduction under section 162(c) and representing taxable income in the hands of the distributee. See *In re Smith's Estate*, 64 Fed. Supp. 196, where the court stated:

There was no present right on the part of the beneficiaries to receive the income of the estate, even though the will as construed by the Chancery Court of Shelby County, Tenn., provided that the income was to accrue to the beneficiaries "as and from the date of the death of the testator." This is true because the estate during the taxable period was in process of administration, and in fact still is. The plaintiff's capacity as executor was entirely different from its capacity as trustee. While acting as executor it was under the orders of the County Court of Obion County, Tenn., where it was bound by law to make its final settlement as executor after the estate had been fully administered. During the process of administration the income of the estate was the property of the plaintiff as executor. The plaintiff was under no obligation to pay over any income of the estate to the testamentary trust beneficiaries while acting as executor, and the trust beneficiaries did not have an enforcible right against the executor for such payment.

The problem here is not to ascertain the status for Federal tax purposes of something received by the petitioners in the normal course through distribution from the estate, as was the situation in *Lyeth* v. *Hoey, supra*. Rather, we are requested by the respondent to regard the situation as if the trust had been established and to conclude that the application of the statutes in question is not dependent upon the state procedures and processes with respect to the actual administration of the estate. The majority have adopted that view.

I think the Circuit Court of Appeals for the Fifth Circuit took the proper view of the matter in *Frederich* v. *Commissioner*, 145 Fed. (2d) 796, reversing 2 T. C. 936, when it held that the period contemplated by the statute and by the regulations is the period during which the estate is actually in process of administration under the laws of the state, absent fraud, conspiracy to evade taxes, or other serious irregularity. By design, or at least by necessary implication, the provisions relating to the taxation of estates and trusts depend in their application upon the state laws and processes, and, as the Circuit Court observed in the *Frederich* case, the onus of a delayed distribution of an estate's assets is the taxation of the income as a unit during the period of actual administration.

Here there is no suggestion that this was a scheme or device designed for the purpose of defrauding the Federal Government. The evidence with respect to the nature of the assets making up the residu-

ary estate and all the factors and circumstances in connection therewith indicate that there were business reasons, which apparently have been deemed sufficient by the court having jurisdiction, to warrant continued administration of the estate. Hence, there is no basis for a conclusion to the contrary, and I think the determination of the respondent on this issue should not be sustained.

Tyson, *J.*, agrees with this dissent.

