**RUSSELL et al. v. BOWERS et al.**

District Court, S. D. New York.
March 6, 1939.

14

Gifford, Woody, Carter & Hays, of New York City (Edgar W. Hatfield, of New York City, of counsel), for plaintiffs.

Gregory F. Noonan, U. S. Atty., of New York City (Robert E. Pratt, Asst. U. S. Atty., of New York City, of counsel), for defendants.

CLANCY, District Judge.

On October 31, 1924, William H. Russell transferred certain stocks and bonds to the Metropolitan Trust Company, now the Manufacturers Trust Company, as trustee, in accordance with an indenture then executed, by which he created an irrevocable trust thereof with himself as life beneficiary. The trust instrument provided that upon Russell's death the capital and unexpended income was to be conveyed, assigned, transferred and delivered by the trustee as follows: $25,000 was to be paid, without any deduction for any tax, in cash to Isabel K. Russell, wife of the grantor, if living; $7,500, without deduction for any tax, in cash to Justis D. Smith, if living; out of the balance, all taxes, including gift, transfer or inheritance, were to be paid; and the rest was to be divided by the trustee into two equal shares, one of which the trustee was to hold in further trust for the life and benefit of Isabel K. Russell and then distribute as further directions provided. The second equal share was to be conveyed absolutely to the lawful issue of the grantor living at his death,

who were to take per stirpes. The trust deed invested the trustee with absolute discretion to determine values and manner of distribution. Those included in the phrase "lawful issue" were stated in the deed to have no right, power or privilege to sell, alienate or hypothecate his or her beneficial or legal titles to the trust fund during the term of the trust and delivery was to be made "at the time said beneficiaries are entitled to take the same under the terms of the trusts."

After the death of William H. Russell, the trustee commenced an action in the Supreme Court of the State of New York to settle its account and on June 17, 1929, a final judgment was entered which declared, among other things, that the "trust for the benefit of William H. Russell terminated upon his death" and that "said trustee continued to hold the property and securities constituting the said trust fund pursuant to the provisions of Paragraphs '1' to '4' inclusive of said Article 'First' of said indenture or deed of trust." These were the provisions directing the trustee after the grantor's death.

William H. Russell died on November 9, 1928 and left him surviving his widow and two sons. On August 5, 1929, the remaindermen executed an instrument which recited their agreement that the trustee "may make a partial distribution of the remainder of said trust" in accord with certain schedules. The only value, if any, we attach to this agreement, which was never formally executed by the trust company, is that of an acknowledgment by the remaindermen that the trustee was still trustee and acting as such. It assumes only to accord consent by the remaindermen to some of the bank's acts and imposes no obligations on the bank as trustee or otherwise and works no change in the law applying to sales made after it. Distribution of the shares listed in the schedules stated in the agreement was not made until 1930 and only partial distribution was made then. During 1928, after Russell's death, and 1929, rights were issued on some of the shares of stock mentioned in the schedules; some before August 5, 1929 and some after.

During 1929 the Manufacturers Trust Company sold these rights and filed an income tax return stating as a tax the sum of $16,122.73 which it paid on March 14, 1930. The return comprised the profit from the sale by the Manufacturers Trust Company of these rights and of other securities. In 1932 Manufacturers Trust Company made a claim for refund and partial refund was made, leaving a balance not refunded of $12,564.19, which was the amount ultimately computed as the tax by the Commissioner. In computing the profit and loss upon the sales of securities, the Commissioner employed as a basis the original cost of said securities to the grantor, William H. Russell. The trust company says that the use of that basis for computing profit is wrong; that it should not have paid any income tax computed on amounts realized by sales occcurring after the life beneficiary's death because the statute no longer imposed liability on it. The remaindermen claim they owned the property sold and the liability for income tax was theirs and should be based on the values obtaining on the day of Russell's death. This would establish a loss for them and they want returned what they paid as individuals which they insist constitutes an overpayment.

The question is: who pays, and on what basis, the income tax on the income and the capital gain realized by sales of personal property in the hands of the trustee for another's life, after that life's expiration and yet undistributed, the trustee having discretionary power to sell.

For the purposes of this decision, we will not debate the remaindermen's assumption that this trust merits the name "dry trust." We take it to be the established law in New York that when a trust of real property has run dry; that is, when the purposes for which it was erected have been fulfilled, title vests in the remainderman. The plaintiffs here say that the Court, in Matter of Thomas, 228 App.Div. 203, 239 N.Y.S. 604, determined that this was the law applying also to trusts of personal property. It can be debated whether or not this inference was made by the Court in that case, for, when it was determined by the Court of Appeals, 254 N.Y. 292, 172 N.E. 513, that Court said it was unnecessary to pass upon the question of title but allowed commissions anyway to a testamentary trustee, saying that he had possession and duties. It is difficult to comprehend the notion of a fiduciary standing in what lawyers call "naked possession." The possession of a fiduciary is the possession characteristic of his role and its character is determinable by a consideration of the duties which distinguish him as

a fiduciary. These duties necessarily imply correlative rights and these, more duties, and these again, rights, until it is a matter of great difficulty or maybe utter impossibility to distinguish his right from full legal title.

■ We would want no more striking illustration of the difficulty of holding a trustee deprived of any estate whatever in the trust res by the death of the life tenant than the one we are deciding. The stocks constituting the res were given to the trustee as trustee and recorded in its name. It is admitted that up to the death of the life tenant it had a complete legal title. Its duty of distribution has been modified but it has lost none of the indicia of title. We think to attempt to interpret section 11 of the Personal Property Law (Consol.Laws, c. 41) so that it requires the destruction of the trustee's estate in the stocks involved in this case on the death of the life tenant, would be a denial of the actual fact. Our Circuit Court was of a like opinion upon analogous facts, Backer v. Levy, 2 Cir., 82 F.2d 270, and cited Yates v. Thomas, 35 Misc. 552, 71 N.Y.S. 1113. See also Farmers' Loan and Trust Company v. Pendleton, 115 App.Div. 506, 101 N.Y.S. 340.

In any event, the case cannot be decided on theories of title alone. Congress may tax income in the hands of one not the holder of legal title and has done so where that one has immediate control. Woolley v. Malley, 1 Cir., 30 F.2d 73. Taxation is concerned, rather, with the actual command and control of property and interpretation of tax law depends more on reality than it does on theory. Corliss v. Bowers, 281 U.S. 376, 50 S.Ct. 336, 74 L. Ed. 916; U. S. v. Jones, 236 U.S. 106, 35 S.Ct. 261, 59 L.Ed. 488, Ann.Cas.1916A, 316. As a practical matter, the possession by the trustee in this case is not different from that of the trustee in Merchants' Loan & Trust Company v. Smietanka, 255 U.S. 509, 41 S.Ct. 386, 389, 65 L.Ed. 751, 15 A.L.R. 1305, and the language of the Court there is pertinent here. "Here the trustee, acting within its powers, sold the stock, as it might have sold a building, and realized a profit of $700,000, which at once became assets in its possession, free for any disposition within the scope of the trust, but, for the purposes of taxation, to be treated as if the trustee were the sole owner." We think the trustee here surely had such property right in the res

constituting the trust and in its income and gain as would reasonably require the tax burden to be placed upon it. We conclude, therefore, that it was the proper taxpayer and that the tax was correctly computed by the Commissioner and that the complaint must be dismissed.

Our decision would not be otherwise if we assumed the position of the plaintiff remaindermen. In order to consider their contention and answer it, we must assume, as they have assumed in the complaint and throughout their argument, that immediately upon the death of the life tenant legal title vested in them in the trust res; that, therefore, income was theirs, the sales were their sales and the gains realized, their gains, all in the sense that they had vested title thereto. They further claim that the basis for the computation for these gains, as theirs, is the value of the securities on the day of the life tenant's death. This contention is based on their claim that section 113(a) (3) of the Revenue Act of 1928, 45 Stat. 818, 26 U.S.C.A. § 113 note, while it applies to trustees during the continuation of a trust, does not apply to remaindermen who receive property other than by a transfer of property in trust. They claim the transfer to them is not one in trust but, to use their phrase, "one out of trust" and that the only basis provided by law for the calculation of the subsequent loss or gain to the trust fund is its value on the date of its acquisition by them.

The Revenue Act of 1928 reads:

"Sec. 113. Basis for determining gain or loss.

"(a) *Property acquired after February 28, 1913.*—The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that—

\* \* \* \* \* \* \*

"(2) *Gift after December 31, 1920.*—If the property was acquired by gift after December 31, 1920, the basis shall be the same as it would be in the hands of the donor or the last preceding owner by whom it was not acquired by gift. If the facts necessary to determine such basis are unknown to the donee, the Commissioner shall, if possible, obtain such facts from such donor or last preceding owner, or any other person cognizant thereof. If the Commissioner finds it impossible to obtain such facts, the basis shall be the fair market value of such property as found by

the Commissioner as of the date or approximate date at which, according to the best information that the Commissioner is able to obtain, such property was acquired by such donor or last preceding owner;

"(3) *Transfer in trust after December 31, 1920.*—If the property was acquired after December 31, 1920, by a transfer in trust (other than by a transfer in trust by a bequest or devise) the basis shall be the same as it would be in the hands of the grantor, increased in the amount of gain or decreased in the amount of loss recognized to the grantor upon such transfer under the law applicable to the year in which the transfer was made; * * *

"(5) *Property transmitted at death.*—If personal property was acquired by specific bequest, or if real property was acquired by general or specific devise or by intestacy, the basis shall be the fair market value of the property at the time of the death of the decedent. If the property was acquired by the decedent's estate from the decedent, the basis in the hands of the estate shall be the fair market value of the property at the time of the death of the decedent. In all other cases if the property was acquired either by will or by intestacy, the basis shall be the fair market value of the property at the time of the distribution to the taxpayer. In the case of property transferred in trust to pay the income for life to or upon the order or direction of the grantor, with the right reserved to the grantor at all times prior to his death to revoke the trust, the basis of such property in the hands of the persons entitled under the terms of the trust instrument to the property after the grantor's death shall, after such death, be the same as if the trust instrument had been a will executed on the day of the grantor's death." 45 Stat. 818, 26 U.S.C.A. § 113 note.

When section 204(a) (3) of the Revenue Act of 1924, 43 Stat. 258, was enacted, the section being substantially the same as section 113(a) (3) of the 1928 Act, the Senate Finance Committee commented as follows: "There is no provision in the existing law which corresponds to paragraph 3 of subdivision (a). According to this paragraph, the basis for determining gain or loss from the sale or other disposition of property acquired after December 31, 1920, by a voluntary transfer in trust is the same as it would be in the hands of the grantor following the principle laid down in paragraph (2) as to

gifts * * *." Thereupon some confusion ensued. The case of Francis v. Commissioner, 15 B.T.A. 1332, held that remaindermen receiving property after the termination of an inter vivos trust, in which the grantor had reserved a life estate, did not acquire property by gift within the meaning of the word "gift" as it was used in the law of 1921, 42 Stat. 229, § 202(a) (2). The opinion disclosed that the Board thought that the then new provision of the 1924 Act, expressly prescribing for transfers in trust, was not merely explanatory of the earlier acts but taxed a field which had not theretofore been included. Bankers Trust Company v. Commissioner, 24 B. T.A. 10, followed the language and reasoning in the Francis v. Commissioner case when the issue before it involved the taxation of a trustee. It held that gains to property in the hands of a trustee were not taxable as a gift under the gift section of the Act of 1921. In New York Trust Company v. Commissioner, 27 B.T.A. 1127, the Board was confronted with the decision in Burnet v. Guggenheim, 288 U.S. 280, 53 S.Ct. 369, 77 L.Ed. 748, holding that a gift may be made by a transfer in trust when the grantor later relinquishes all dominion over the subject matter. The Francis and Bankers Trust Company cases may be distinguished from the Burnet case because in each of them the grantor reserved a life estate to himself. Our Circuit Court, in its opinion accompanying its decision of the New York Trust Company case, New York Trust Co. v. Commissioner, 2 Cir., 68 F.2d 19, did not comment directly upon the Francis case, although the language used in stating the purposes for which section 204(a) (3), which subsequently became section 113(a) (3), was enacted, was contrary to the interpretation placed upon it in both the Francis case and the Bankers Trust Company case. Our Circuit Court said that it was a definition of an earlier purpose rather than a new enactment. Their decision was affirmed by the Supreme Court, New York Trust Co. v. Helvering, at 292 U.S. 455, 54 S.Ct. 806, 78 L.Ed. 1361, where again the Court did not comment upon or overrule the Francis case, although it was there likewise held that a transfer in trust may be considered a gift, within the meaning of section 202(a) (2) of the 1921 Act, to both the trustee and the beneficiary who happened for the purpose of the decision to be the life tenant. He was, however, also the remainderman and the taxable capital gains in the hands of

the trustee were necessarily part of the corpus of the trust which would ultimately fall to the life tenant if he became the remainderman by living until he was twenty five. The only statement of the law that would conform with these opinions, as we understand them, is that an irrevocable inter vivos trust, where the settlor reserves an interest in himself, is not a gift within the meaning of section 113(a) (2), but, where he does not reserve any interest in himself, it is. Where the grantor does reserve an estate to himself, if the transfer is not a gift within the meaning of section 113(a) (2), it is, nevertheless, a transfer in trust within the meaning of section 113 (a) (3). This conclusion of ours is based upon the opinions in both the Francis and the Bankers Trust Company cases which inferred that section 204(a) (3) of the 1924 Revenue Act was intended to cover the situations arising in those two cases. Prior to its adoption, the Senate Committee report described the purpose of the proposed enactment of section 113(a) (3) as intended to include transfers: "Even if made in contemplation of death or to take effect in possession or enjoyment after death." We think this language finds illustration in the situation where an irrevocable trust is created with the life estate reserved in the settlor and that it adequately describes the estate of a remainderman. The plaintiffs do not question that section 113(a) (3) includes the trustee in this case before the death of the life beneficiary but do deny that it includes the remaindermen. This is contrary to the inference in the Francis case which involved remaindermen and is also contrary to the established rule in gifts. In Forbes v. Commissioner, 32 B. T.A. 139, a remainderman was held taxable as the recipient of a gift or transfer in trust. Counsel for the Bureau of Internal Revenue, in GCM 12309 CB XII—2, page 75, stated, in reference to section 113 (a) (3) of the Revenue Act of 1932, 47 Stat. 198, 26 U.S.C.A. § 113 note, which is identical with section 113(a) (3) of the 1928 Act, that it applies to both the trustee and the remaindermen. This is the only fair interpretation of the section that makes for uniformity and we think it unimpeachable in light of the avowed purpose of Congress to prevent evasion and take part of all gains derived from capital investments. Taft v. Bowers, 278 U.S. 470, 49 S.Ct. 199, 73 L.Ed. 460, 64 A.L.R. 362. Any other interpretation would determine that a lacuna has existed in the tax law since 1924 which has either not been recognized or not fenced by Congress despite its efforts to barricade all avenues of escape.

It would appear, therefore, that seen from any viewpoint, the basis for taxation of the income derived from capital gains to the corpus in the hands of the trustee, whether assessed to the trustee or to the remainderman, would have the same basis; that is, that they would be computed on the basis of their cost to the settlor of the trust. From such a conclusion, it would follow that no injury is done by assessing the tax to the trustee because the Court is not concerned with the accidental disparity in assessments determined by the inevitable differences in individual cases, but only with general rules of construction. Brewster v. Gage, 280 U.S. 327, 50 S.Ct. 115, 74 L.Ed. 457. Assuming, therefore, that the remaindermen plaintiffs had title when the facts transpired on which the payments they complain of were made, and the trustee had only possession, and his power of sale, we would still conclude the trustee was the proper taxpayer and would see no disfavor to the remaindermen in so doing.

Complaint dismissed.