HELVERING, COMMISSIONER OF INTERNAL REVENUE, *v.* GAMBRILL.

No. 472.   Argued March 6, 1941.—Decided March 31, 1941.

*Miss Helen R. Carloss* argued the cause, and *Solicitor General Biddle, Assistant Attorney General Clark,* and *Messrs. Sewall Key, Thomas E. Harris,* and *Arthur A. Armstrong* were on the brief, for petitioner.

*Mr. Allin H. Pierce,* with whom *Mr. Sidney W. Davidson* was on the brief, for respondent.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

The questions involved here are in part the same as those in *Maguire* v. *Commissioner, ante,* p. 1. Respond-

ent was a remainderman under a trust created by the will of his grandmother [1] who died in 1897. The trust *res*, consisting of personalty, was delivered by the executors to themselves as trustees in 1898. The life beneficiary, respondent's mother, died in March, 1928. On May 5, 1928, the trustees delivered the corpus to respondent as remainderman. Some of the property was part of the original trust *res*, and some was purchased by the trustees both prior to and subsequent to March 1, 1913. During the year 1930 (in February, on May 6, and in June) respondent sold some of the property in each group. The Board of Tax Appeals (38 B. T. A. 981) and the Circuit Court of Appeals (112 F. 2d 530) held: (1) that for the purpose of determining gain or loss on the sale of the property in question the basis to respondent by virtue of § 113 (a) (5) of the Revenue Act of 1928 (45 Stat. 791) was the fair market value of the property on the date when the corpus was delivered to

---

[1] Respondent was the sole surviving issue of his mother, Anna Van Nest Gambrill, and took under the following provisions of his grandmother's will:

"Ninth. All the residue of my estate of every kind I give and devise as follows:

'One half thereof in equal shares to my daughters Mary Van Nest Jackson, Anna Van Nest Gambrill, and Jennie Van Nest Foster, and my granddaughter, Mary Alice Van Nest absolutely.

'The other half thereof in four equal shares to my executors, to hold the same in trust, one share for the benefit of each of the same four persons to wit my said three daughters and my said granddaughter and to receive the income and pay the same to her during her life with full power to invest and reinvest in their discretion without any limitation whatsoever and at her death to transfer and deliver the same as she if leaving issue shall by will direct or in the absence of such direction, to her issue equally, or if she shall leave no issue, then to the survivors of the said four persons to wit my said three daughters and my said granddaughter, and to the issue of any of the said four persons who may have died, the issue to take the share which the parent would have taken if living.' "

respondent; and (2) that the property sold in February, 1930 had not been held by the taxpayer for more than two years and was, therefore, not a capital asset within the meaning of § 101 (c) of the 1928 Act, while that sold on May 6 and in June, 1930, had been held by respondent for more than two years and was therefore a capital asset.

The rulings on the first question were erroneous. For the reasons stated in *Maguire* v. *Commissioner, supra,* the basis under § 113 (a) (5) for the property delivered to respondent by the testamentary trustees was its value when distributed by the executors to the trustees if the property was owned by the decedent at her death, and cost to the trustees if it was purchased by them.[2]

We also disagree with the disposition made of the second question. Capital gains or losses are defined as those resulting from sales or exchanges of capital assets. § 101 (c) (1) and (2). Capital assets are defined (with exceptions not material here) as "property held by the taxpayer for more than two years." § 101 (c) (8). And § 101 (c) (8) (B) provides: "In determining the period for which the taxpayer has held property however acquired there shall be included the period for which such property was held by any other person, if under the provisions of section 113, such property has, for the purpose of determining gain or loss from a sale or exchange, the

---

[2] It should, of course, be noted that § 113 (b) provided:

"(b) Property acquired before March 1, 1913.—The basis for determining the gain or loss from the sale or other disposition of property acquired before March 1, 1913, shall be:

(1) the cost of such property (or, in the case of such property as is described in subsection (a) (1), (4), (5), or (12) of this section, the basis as therein provided), or

(2) the fair market value of such property as of March 1, 1913, whichever is greater. In determining the fair market value of stock in a corporation as of March 1, 1913, due regard shall be given to the fair market value of the assets of the corporation as of that date."

same basis in whole or in part in his hands as it would have in the hands of such other person."

We are of the view that under these provisions respondent's holding period dates from the decedent's death for property which she then owned and from the date of purchase for property purchased by the trustees. In *McFeely* v. *Commissioner*, 296 U. S. 102, this Court held that a legatee's holding period under § 101 (c) (8) of the 1928 Act dated from the decedent's death for property owned by the decedent and distributed to the legatee by the executors, in spite of the fact that the legatee's basis under § 113 (a) (5) was value at the time of distribution to him by the executors. The date of acquisition was held to be the date of death, regardless of the gap between that date and the date of distribution. And that result was reached even though some of the taxpayers involved were residuary legatees whose interests at date of death were not unconditional. The reasoning of that case plus § 101 (c) (8) (B) make it plain that respondent's interest, albeit a remainder, was acquired at the date of decedent's death for property then owned and at the date of purchase for property purchased by the trustees. The continuity in his holding was not broken by the intervening trust. The formal constitution of that trust though of special significance under § 113 (a) (5) (*Maguire* v. *Commissioner, supra*) did not change the basic quality of his property interest. And the fact that that interest did not ripen into full and complete ownership except by the passage of time or the occurrence of subsequent events is inconsequential. For § 101 (c) (8) (B) provides, as we have seen, that in determining the taxpayer's holding period there shall be included the period for which the property was held by any other person if under § 113 the property had the same basis in whole or in part in the taxpayer's hands as it would have in the hands of the other person. It is plain that under

§ 113 the basis to the trustees was the same as the basis to the taxpayer. Hence the period of their holding is not to be excluded from the period of the taxpayer's holding. That makes plain that "property held by the taxpayer" as used in § 101 (c) (8) embraces not only full ownership but also any interest whether vested, contingent, or conditional. Otherwise the period of the holding by trustees would not be included in the holding by a mere remainderman. Hence, as in *McFeely* v. *Commissioner, supra,* we look to the time when the taxpayer first acquired the interest which later ripened into full ownership. It is plain that for property owned by the decedent he acquired that interest at her death and that for property purchased by the trustees he acquired that interest at the date of purchase.

*Reversed.*

The CHIEF JUSTICE and MR. JUSTICE ROBERTS think the judgment should be affirmed for the reasons stated by the court below, 112 F. 2d 530.