**FIFTH AVE. BANK OF NEW YORK v. UNITED STATES.**

No. 45046.

Court of Claims.

Nov. 3, 1941.

Frederick L. Pearce, of Washington, D. C. (Morris, Kix Miller & Baar, of Washington, D. C., on the brief), for plaintiff.

Elizabeth B. Davis, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

MADDEN, Judge.

Plaintiff, as trustee under a trust created in 1926 by one Westinghouse, in 1934 sold certain bonds at a profit. One hundred sixty of the bonds had been acquired from the creator of the trust in 1927 and 1929; thirty of them the trustee had purchased out of trust funds in 1932 prior to the death of the grantor in 1933 and the balance were purchased by the trustee after the grantor's death. The trust was for the benefit of the grantor for life and revocable by him during his lifetime. After his death his widow was to be the beneficiary for her life, and on her death the corpus was to be distributed forty percent to certain named charitable and educational institutions and sixty percent to designated individuals. The grantor died November 18, 1933, without having revoked the trust.

In its income tax return for 1934 the trustee showed a capital gain from the sale of the bonds and for the purpose of section 117 of the Revenue Act of 1934 computed the holding period of the bonds from the grantor's death in 1933. On October 16, 1937 the trustee filed a claim for refund of income taxes paid for 1934 on the ground that in computing the capital gain on the securities sold the period of holding by the trustee started at the time when it acquired legal title, namely, 1927 and 1929 as to those bonds transferred by the creator of the trust and 1932 in the case of those purchased by it prior to the grantor's death. Upon the rejection of the claim for refund, timely suit was commenced in this court.

The dispute in this case therefore relates to the time from which the holding of the trustee dates for the purpose of determining what percentage of the profit realized must be returned for taxation under section 117(a) of the Revenue Act of 1934. There is no controversy as to the bonds acquired after the grantor's death. As to the others, the defendant argues that the holding dates from the grantor's death, while plaintiff claims that the holding dates from the acquisition of legal title by it.

Plaintiff had, in a sense, "held" the bonds from the dates of the transfer by the creator of the trust and the purchase by it since it had acquired legal title and the responsibilities of trustee ownership on those dates. Our question is whether it began to "hold" the bonds within the meaning of the Revenue Act of 1934 on those dates. It is plain that when the creator of the trust transferred these bonds to the trustee in 1927 and 1929 the trustee did not then begin to "hold" them for the purpose of measuring the length of time that they were held. Section 117(c) (2) of the Revenue Act of 1934 is specific that where the property in the hands of one person has under Section 113 the same basis for valuation that it had in the hands of another person, the holding of that other person should be included in the time of holding. Section 113(a) (3) 26 U.S.C.A. Int.Rev.Acts, page 697, provides that in the case of an inter vivos transfer in trust, the basis of valuation shall be the same as it would have been in the hands of the grantor. The effect of the two sections is that the transfers by the creator of the trust to the trustee in 1927 and 1929 were, at that time, of no significance either for the purpose of fixing a basis for the valuation of the property, or a beginning of the time of holding. If the trustee had at any time before the death of the creator of the trust in November 1933 sold the bonds, both the basis of their valuation and the beginning of their period of holding would have been fixed as if the conveyance to the trustee had never taken place and the creator of the trust had continued to own them.

Upon the death of the grantor in 1933, the provisions of section 113(a) (5) became applicable. The statutory language is: "In the case of property transferred in trust to pay the income for life to or upon the order or direction of the grantor, with the right reserved to the gran-

tor at all times prior to his death to revoke the trust, the basis of such property in the hands of the persons entitled under the terms of the trust instrument to the property after the grantor's death shall, after such death, be the same as if the trust instrument had been a will executed on the day of the grantor's death." The basis of valuation then became the date of the grantor's death, as both parties agree. Shall the 1927 and 1929 dates, which were, from those dates until the grantor's death in 1933, insignificant for income tax purposes, be regarded as having become retroactively controlling as to the period of holding after the grantor's death?

While the question is by no means free from doubt, we think that Congress did not intend the result for which plaintiff contends. Section 113(a) (5) was first put into the Revenue Act in 1928, 26 U.S.C.A. Int.Rev.Acts, page 380. The Conference Report said: "A special rule is provided in section 113(a) (5) by which to determine the basis of property transferred in trust with the right reserved to the grantor at all times prior to his death to revoke the trust where the sale or other disposition of the property occurs after the death of the grantor. This rule includes sales or other disposition by the trustee and also by a beneficiary of the trust. In view of the complete right of revocation in such cases on the part of the grantor at all times between the date of the creation of the trust and his death, it is proper to view the property for all practical purposes as belonging to the grantor rather than the beneficiary and to treat the property as vesting in the beneficiary according to the terms of the instrument, not at the date of the creation of the trust, but rather on the date of the grantor's death, for the purpose of determining gain or loss on sale or other disposition of the property on the grantor's death by the trustee or a beneficiary. Accordingly, it is provided that the basis of such property in the hands of the persons entitled thereto by the terms of the trust instrument after the grantor's death

shall be the same as if the instrument had been a will executed on the day of his death. Thus property acquired by virtue of revocable trusts of the kind described is treated, for all purposes the same as though it had been transmitted by the grantor by will at his death. (Conference Report No. 1882, 70th Cong., 1st Sess., p. 15.)" The last sentence in this report is a strong indication that Congress did not intend that the other provisions of the statute relating to the period of holding, section 101 of the 1928 act, 26 U.S.C.A., Int.Rev.Acts, page 370, now section 117, should be regarded as ignoring the revocable nature of the trust and carrying the holding period back beyond the grantor's death.[1]

The importance which Congress attached to the revocable nature of the trust is further shown by the fact that according to the statutory scheme of sections 113 and 117, a transfer in trust such as this, but without provision for revocation, would have, even after the death of the grantor, as to trustee and beneficiary, left both the basis of value and the period of holding to be determined as if the grantor had never conveyed the property to a trustee. See Russell v. Bowers, D.C.S.D.N.Y., 27 F.Supp. 13.[2]

Since we regard as controlling the attitude of Congress toward the quality of revocability in the trust, it follows that our reasoning applies also to the bonds purchased by the trustee in 1932 and we conclude that the beginning of their "holding" by the trustee within the meaning of section 117 as well as their basis of value, is the time of the death of the grantor.

We recognize that it is not a necessary part of the statutory scheme that the beginning of the period of holding should in all cases coincide with the time as of which the valuation basis is fixed. Cf. McFeely v. Commissioner, 296 U.S. 102, 56 S.Ct. 54, 80 L.Ed. 83, 101 A.L.R. 304; Helvering v. Gambrill, 313 U.S. 11, 61 S.Ct. 795, 85 L.Ed. 1155. In those cases, as here, the question was one of statutory interpretation, but the lan-

---

[1] It should be observed that the 1932 act, and indeed all the revenue acts after 1926, had the same provisions contained in the 1934 act making the date of the conveyance to the trustee insignificant so far as the period of holding was concerned. Revenue Act of 1926, sec. 208 (a) (8); Revenue Act of 1928, sec. 101(c) (8)

(B); Revenue Act of 1932, sec. 101(c) (8) (B).

[2] In the instant case, as we have said, section 117 (c) (2) is not applicable because the trust being revocable and the creator of the trust having died, section 113 (a) (5) establishes a new basis of valuation.

guage there construed is not the language here under construction and those cases are therefore not controlling.

■ We hold therefore that the death of the grantor which ended the revocability of the trust and fixed the basis for the valuation of the property also began the period of holding of the trustee within the meaning of Section 117(a).

It follows that plaintiff did not overpay its taxes and the petition is dismissed. It is so ordered.

WHALEY, Chief Justice, and JONES and LITTLETON, Judges, concur.

WHITAKER, Judge (dissenting).

I am unable to agree with the majority opinion. As that opinion concedes, the trustee undoubtedly "held" the bonds from the time they were transferred to it by the grantor, in one sense at least. It seems to me it "held" them for all purposes, including income tax purposes.

The statute provides that a taxpayer shall include a certain percentage of his gain or loss on the sale of a capital asset, depending on the period he had held it. It does not define in so many words what it means by "held." The ordinary man to whom the language of the statute was addressed would gather that Congress meant the period the taxpayer had title to the asset, the period during which he had the right to exercise over it the incidents of ownership. In this case this period started when they were transferred to the trustee. From that time on it, and it only, was entitled to their possession; only it could maintain an action in replevin if possession of them was taken from it; only it could collect the dividends thereon or exercise any of the other incidents of ownership. The layman reading the act would certainly think he had "held" them from the time title to and possession of them had been transferred to him.

Moreover, the statute makes four exceptions to a taxpayer's period of actual holding: (1) Where he acquired the property in an exchange; (2) where stock or securities are received from a corporation on distribution and no gain or loss is recognized; (3) where he received stock or securities in a transaction in which he was not permitted to deduct a loss from the sale or other disposition of substantially identical stock or securities; (4) and where no gain or loss, for any reason, is recognized on the transfer to him. In such cases the period of the taxpayer's actual holding is increased by an additional period.

The present case comes within none of these exceptions. No other exception is made, and so we must conclude no other exception was intended. Under the opinion of the majority of the court another is added. I do not think there is any warrant for this.

The extract from the conference report quoted in the opinion of the majority does not seem to me to be persuasive. There the conferees were speaking of the basis for valuing an asset to determine gain or loss; they did not have in mind the period a taxpayer had held an asset; and the Supreme Court has held explicitly, as the majority concede, that the time as of which an asset is valued is immaterial in determining the period of holding. McFeely v. Commissioner, 296 U.S. 102, 56 S.Ct. 54, 80 L.Ed. 83, 101 A.L.R. 304; Helvering v. Gambrill, 313 U.S. 11, 61 S. Ct. 795, 85 L.Ed. 1155.