PIERCE ESTATES, INCORPORATED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

PIERCE WITHERS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

LOUISE K. HUTCHINS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

J. F. HUTCHINS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 619, 2029, 2504, 2511, 2512. Promulgated May 17, 1944.

G. *Kibby Munson, Esq.*, for the petitioners.

*Frank B. Schlosser, Esq.*, and *Loyal E. Keir, Esq.*, for the respondent.

880

884

OPINION.

BLACK, *Judge*: We shall consider the issues in the order previously stated.

*Issue No. 1.*—In its returns for the years 1938, 1939, and 1940, petitioner Pierce Estates, Inc., claimed a basis for cattle which were either sold or which died during those years of $39,180, $45,220, and $41,140, respectively. These cattle had been acquired by petitioner at the time of its incorporation in 1929 from the four grandchildren of Abel H. Pierce, deceased, by the issuance of shares of stock to them. Petitioner concedes that the basis originally claimed was too high and now contends that the basis for such cattle which were either sold or which died during the taxable years was their fair market value on September 23, 1929, which the parties have stipulated was $25,290, $26,280, and $37,785, respectively. The respondent determined and contends that the basis for such cattle is zero. The explanation of his determination is in our findings.

The applicable statute for the year 1938 is the Revenue Act of 1938 and the applicable statute for the years 1939 and 1940 is the Internal Revenue Code. Section 113 (a) (8) and section 112 (b) (5) of both statutes are identical are are printed in the margin.[1] Also section 112 (b) (5) of the Revenue Act of 1928 is identical with that printed in the margin. In *Helvering* v. *Cement Investors, Inc.*, 316

---

[1] SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property ; except that—

(8) PROPERTY ACQUIRED BY ISSUANCE OF STOCK OR AS PAID-IN SURPLUS.—If the property was acquired after December 31, 1920, by a corporation—

(A) by the issuance of its stock or securities in connection with a transaction described in section 112 (b) (5) (including, also, cases where part of the consideration for the transfer of such property to the corporation was property or money, in addition to such stock or securities), or

(B) as paid-in surplus or as a contribution to capital, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made.

SEC. 112. RECOGNITION OF GAIN OR LOSS.

(b) EXCHANGES SOLELY IN KIND.—

(5) TRANSFER TO CORPORATION CONTROLLED BY TRANSFEROR.—No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation, and immediately after the exchange such person or persons are in control of the corporation ; but in the case of an exchange by two or more persons this paragraph shall apply only if the amount of the stock and securities received by each is substantially in proportion to his interest in the property prior to the exchange.

U. S. 527, the Supreme Court, in considering section 112 (b) (5) of the Revenue Act of 1936, which is identical with section 112 (b) (5) set out in the margin, *supra*, said: "If a transaction meets the requirements of section 112 (b) (5), the basis of the property in the hands of the acquiring corporation is the same as it would be in the hands of the transferor. Section 113 (a) (8):" In the instant proceedings the parties agree that the transactions here meet the requirements of section 112 (b) (5) and that under section 113 (a) (8) the basis of the cattle in question is the same as it was in the hands of the transferors when they transferred the cattle along with other property to the petitioner in September 1929 in exchange for petitioner's capital stock. The parties disagree as to what the basis was in the hands of the transferors in September 1929. At that time the Revenue Act of 1928 was in effect. The material provisions of section 113 of the Revenue Act of 1928 are in the margin.[2]

The respondent contends that the decedent, Abel H. Pierce, by his will created a testamentary trust; that at some time prior to March 1, 1913, the administration of the decedent's estate ceased and the executors from then on until August 5, 1929, acted in the capacity of trustees of the trust; that the beneficiaries of the trust, who were the four grandchildren of the decedent and who are referred to above as the transferors, acquired their interests in the properties of the estate at the date of decedent's death, or in any event prior to March 1, 1913; and that, since the cattle in question were not in existence on March 1, 1913, or prior thereto, and since all the costs of raising such cattle had been deducted as expenses in the income tax returns of the trust prior to the distribution in kind of all the assets of the trust on August 5, 1929, there was no basis remaining in the distributees to be transferred

---

[2] SEC. 113. BASIS FOR DETERMINING GAIN OR LOSS.

(a) PROPERTY ACQUIRED AFTER FEBRUARY 28, 1913.—The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that—

* * * * * * *

(5) PROPERTY TRANSMITTED AT DEATH.—If personal property was acquired by specific bequest, or if real property was acquired by general or specific devise or by intestacy, the basis shall be the fair market value of the property at the time of the death of the decedent. If the property was acquired by the decedent's estate from the decedent, the basis in the hands of the estate shall be the fair market value of the property at the time of the death of the decedent. In all other cases if the property was acquired either by will or by intestacy, the basis shall be the fair market value of the property at the time of the distribution to the taxpayer. * * *

* * * * * * *

(b) PROPERTY ACQUIRED BEFORE MARCH 1, 1913.—The basis for determining the gain or loss from the sale or other disposition of property acquired before March 1, 1913, shall be:

(1) the cost of such property (or, in the case of such property as is described in subsection (a) (1), (4), (5), or (12) of this section, the basis as therein provided), or
(2) the fair market value of such property as of March 1, 1913,

whichever is greater. * * *

* * * * * * *

to petitioner Pierce Estates, Inc., on September 23, 1929. The respondent cites as controlling *Maguire* v. *Commissioner*, 313 U. S. 1.

Petitioner contends that the decedent by the terms of his will never intended to and did not create a testamentary trust; that the decedent by the terms of his will created an independent executorship under the laws of Texas; that the administration of decedent's estate and the independent executorship continued unbroken until August 5, 1929, when the property was distributed in kind to the beneficiaries; and that the basis of the property in question was under section 113 (a) (5) of the Revenue Act of 1928 the fair market value thereof at the time of the distribution in 1929. The parties agree that, if petitioner is correct in these contentions, then petitioner is entitled to $25,290 as a basis for the property in question for 1938; $26,280 for 1939, and $37,785 for 1940.

We agree with respondent that a testamentary trust was created under the decedent's will. We also agree with petitioner to the extent that an independent executorship was also created and qualified as such in March 1901, but we do not agree with petitioner that this independent executorship continued until the assets were distributed in 1929, 28 years after administration was begun. Article 3436 of Vernon's Annotated Texas Statutes provides:

Any person capable of making a will may so provide in his will that no other action shall be had in the county court in relation to the settlement of his estate than the probating and recording of his will, and the return of an inventory, appraisement and lists of claims of his estate.

The decedent made such a provision in paragraph fourth of his will. But we think that from the provisions of the will, especially those set out in our findings, it is too plain to be disputed that the decedent also intended to create a testamentary trust, which trust under direction No. 3 was to continue for five years after the decedent's youngest grandchild attained the age of 25 years. Article 863 of Regulations 74 provides:

ART. 863. *Decedent's estate during administration.*—The "period of administration or settlement of the estate" is the period required by the executor or administrator to perform the ordinary duties pertaining to administration, in particular the collection of assets and the payment of debts and legacies. It is the time actually required for this purpose, whether longer or shorter than the period specified in the local statute for the settlement of estates. Where an executor, who is also named as trustee, fails to obtain his discharge as executor, the period of administration continues up to the time when the duties of administration are complete and he actually assumes his duties as trustee, whether pursuant to an order of the court or not. * * *

The parties have stipulated that the executors and/or trustees, following the probate and record of the will, took no action in the county court except to return an inventory, appraisement of the assets of, and

a list of, the claims against the estate; that all debts of the decedent and all claims against his estate were paid or settled "within a short time" after the probate of the will; and that "shortly after the death of decedent" the executors and/or trustees settled with Hattie Pierce, wife of decedent, who had elected not to take under the will. We think that when these things were done the "period of administration or settlement of the estate" was at an end and that from there on the executors took over as trustees of the trust and continued as such until the trust terminated on August 5, 1929, which was five years after the youngest grandchild had attained the age of 25 years. Cf. *Estate of J. P. Armstrong*, 2 T. C. 731; *Walter A. Frederich*, 2 T. C. 936.

We agree with the respondent that the question here presented is controlled by *Maguire* v. *Commissioner*, *supra*. In that case the decedent died in 1903, leaving a will in which he directed his executors and trustees, among other things, to distribute the corpus of his estate in not less than ten nor more than twenty years after his death to his widow and children in certain specific proportions. In 1905 the executors were discharged by the probate court and, pursuant to the order of the court, turned over to themselves as trustees the residue of the estate. In 1923 certain personal property, a part of which had been owned by decedent and a part purchased by the trustees, was distributed to the taxpayers as beneficiaries under the will, who in turn sold both classes of property in 1930, and the question arose as to the basis to be used in the determination of the gain or loss upon the sales. The Supreme Court, after reviewing the legislative history of section 113 (a) (5), *supra*, held that the basis of the property owned by the decedent at the date of death was its value when received by the trustees from the executors, and that the basis of the property purchased by the trustees was its cost or March 1, 1913 value, whichever was greater. In the course of its opinion the Supreme Court said:

* * * "Distribution to the taxpayer" is not necessarily restricted to situations where property is delivered to the taxpayer. It also aptly describes the case where property is delivered by the executors to trustees in trust for the taxpayer. Such distribution of the estate results in the acquisition by the taxpayer of an equitable estate under the testamentary trust. The fact that he does not then obtain possession or control, the fact that his interest is conditional or contingent, the fact that legal title may not be transferred to him until years later, are immaterial. * * *

Petitioner contends that the *Maguire* case is not controlling here for the reason that in that case there was a formal transfer of the estate from the executors to the same parties as trustees by order of the probate court, whereas in the instant proceedings we have no such formal transfer by order of the local probate court. We do not think that this ·is a material distinction. In the instant proceeding the

decedent, acting under article 3436, *supra,* had provided in his will that his estate be administered independently of the probate court. It, therefore, was not necessary for the probate court to issue an order transferring the property from the independent executors to the trustees. We hold that the *Maguire* case controls. Cf. *Helvering* v. *Gambrill,* 313 U. S. 11; *Helvering* v. *Campbell,* 313 U. S. 15; *Helvering* v. *Reynolds,* 313 U. S. 428; and *Cary* v. *Commissioner,* 313 U. S. 441. The respondent's determination upon this issue is sustained.

*Issue No. 2.*—The applicable statutes provide that in computing net income there shall be allowed as deductions "All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered." Sec. 23 (a), Revenue Act of 1938 and Internal Revenue Code, as amended by sec. 121, Revenue Act of 1942. For each of the taxable years 1938, 1939, and 1940 petitioner paid to Mrs. Runnells $3,000 and to Mrs. Armour $4,500 for their services as vice presidents, and claimed these amounts as deductions for ordinary and necessary expenses. The respondent disallowed the entire amounts as claimed on the ground that, as stated in the deficiency notice, "there is no evidence showing that the amounts were paid for personal services actually rendered." At the hearing petitioner offered the testimony of J. F. Hutchins, who has been the manager and president of petitioner since it was incorporated in 1929. He also was manager of the properties for about four years prior to incorporation. He owns practically one-eighth of petitioner's capital stock. Hutchins testified that the two vice presidents in question were very capable women and that they actually rendered considerable personal services for the petitioner, the nature of which we have set out in our findings. We have carefully considered all the evidence in the record bearing upon the reasonableness of the two salaries in question. We do not think that it can be held that Mrs. Runnells and Mrs. Armour were what might be termed active vice presidents. They lived in cities remote from the place of business of the corporation. However, they did visit the ranch several times a year and otherwise kept in close touch with its affairs and undoubtedly rendered services and advice which were of considerable value to the corporation. These services justified compensation. Cf. *L. Schepp Co.,* 25 B. T. A. 419, 428. Based on the evidence, we have found that "a reasonable allowance for salaries or other compensation for personal services actually rendered Pierce Estates, Inc., during the taxable years in question by Mrs. Runnells and Mrs. Armour was $2,000 each per annum."

*Issue No. 3.*—This issue involves the deductibility of certain legal expenses paid by petitioner Pierce Withers for the years 1938, 1939,

and 1940, and by petitioners  J. F. and Louise K. Hutchins for the year 1940, in connection with the litigation referred to in our findings. The material provisions of section 23 (a) of the Revenue Act of 1938 and of the Internal Revenue Code, as amended by section 121 of the Revenue Act of 1942, are printed in the margin.[3]  Petitioners contend that the facts "bring the expenditures squarely within the provisions of Section 23 (a) of the 1938 Act and of the Code, in any event, as retroactively amended by Section 121 of the Revenue Act of 1942" and that "Certainly the expenditures involved here were made for the collection of income."  They rely principally upon *Walter S. Heller*, 2 T. C. 371, now on review by the Ninth Circuit.

The respondent determined that the expenditures involved were "capital expenditures and hence not deductible from your gross income as ordinary and necessary business expenses."  He made no determination as to whether petitioners were or were not engaged in business.  In his brief he contends that petitioners are not entitled to consideration under section 23 (a) (2), as amended, because they have not established that they were not engaged in the oil and gas business as individuals; that the expenditures were not "ordinary," as that term is used in the act; and that in any event his determination that the expenditures were "capital expenditures" should be sustained. The respondent relies principally upon article 24–2 of Regulations 101 and section 19.24–2 of Regulations 103; *Farmer* v. *Commissioner*, 126 Fed. (2d) 542, affirming on this point *Central Material & Supply Co.*, 44 B. T. A. 282; and *Jones' Estate* v. *Commissioner*, 127 Fed. (2d) 231, affirming 43 B. T. A. 691.

The portion of both regulations relied upon by the respondent is identical and is as follows: "The cost of defending or perfecting title to property constitutes a part of the cost of the property and is not a

---

[3] SEC. 121. NON-TRADE OR NON-BUSINESS DEDUCTIONS.

(a) DEDUCTION FOR EXPENSES.—Section 23 (a) (relating to deduction for expenses) is amended to read as follows:

"(a) EXPENSES.—

"(1) TRADE OR BUSINESS EXPENSES.—

"(A) In General.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *

*　　　*　　　*　　　*　　　*　　　*　　　*

"(2) NON-TRADE OR NON-BUSINESS EXPENSES.—In the case of an individual, all of the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income."

*　　　*　　　*　　　*　　　*　　　*　　　*

(d) TAXABLE YEARS TO WHICH AMENDMENTS APPLICABLE.—The amendments made by this section shall be applicable to taxable years beginning after December 31, 1938.

(e) RETROACTIVE AMENDMENT TO PRIOR REVENUE ACTS.—For the purposes of the Revenue Act of 1938 or any prior revenue act the amendments made to the Internal Revenue Code by this section shall be effective as if they were a part of such revenue act on the date of its enactment.

deductible expense." In referring to an identical provision of Regulations 86, the Tenth Circuit, in *Farmer* v. *Commissioner, supra*, said:

> This regulation finds general support in the decisions of the courts. The authorities quite generally hold that expenditures made in defense of a title upon which depends the right to receive oil and gas royalty payments are capital expenditures and not deductible as ordinary business expenses. *Croker* v. *Helvering*, 67 App. D. C. 226, 91 F. 2d 299; *Murphy Oil Co.* v. *Burnet*, 9 Cir., 55 F. 2d 17, 26; *Blackwell Oil & Gas Co.* v. *Commissioner*, 10 Cir., 60 F. 2d 257. Petitioners did more than litigate the right to receive oil royalty payments. The title to the oil and gas lease under which they received these payments depended upon the title to the land. Without title to the land they had nothing. It was therefore necessary for them to defend and establish the title to the land in order to retain their interest in the oil and gas. The decision of the Commissioner and of the Board in this respect is approved.

To the same effect is *Jones' Estate* v. *Commissioner, supra*, and *Moynier* v. *Welch*, 97 Fed. (2d) 471. Cf. *Bowers* v. *Lumpkin*, 140 Fed. (2d) 927.

We think the above provision of the regulations and the cases relied upon by the respondent are not controlling in the instant proceedings. The expenditures here in question did not involve the defending or the perfecting of title to any property. The petitioners here were concededly the owners of certain leases which they assigned in 1932 to Danciger Oil & Refining Co. of Texas for $35,000 out of lessee's 7/8 interest "in the oil or other minerals produced" plus $1,500,-000 out of 5/48 "of all oil and other minerals produced," and thereafter a 1/24 overriding royalty "on all minerals." The assignee after drilling certain wells paid the $35,000, but a dispute arose between the parties over the method of calculating the payment of $1,500,000, and the operator refused to make further payments until the method of settlement, which was in dispute, could be agreed upon. Suit was then filed by petitioners and, while it was brought in the form of trespass to try title, the attorney who brought the suit testified that it was merely a fiction and was brought in order that a *lis pendens* could be placed on record to prevent a transfer of the leases. While this suit was pending the defendants, in an answer, contended that gas was not a mineral and that, since only gas and a small quantity of watery white distillate had been produced, they should not have paid the $35,000. This contention was disposed of by the trial court in an order wherein the court held that "the word 'minerals' in Texas, included gas, as a matter of law." That contention having been settled in petitioners' favor, a compromise was arrived at which fixed the amount of payments out of gas then due and payable, and judgment was entered accordingly. The controversy did not involve the question of defending or establishing title against an adverse claimant, but only at first the manner of computing royalty payments and, at one stage of the controversy, the right to receive any payments at all. We do not think

it can be doubted that the expenditures in question were made for the sole purpose of collecting the income due petitioners under the assignment. We hold that the expenditures should not be capitalized, but should be treated as expenses paid in the collection of income. Cf. *Walter S. Heller, supra.*

We do not regard as fatal to petitioners' case the fact that they failed to prove that they were or were not engaged in the oil and gas business as individuals. If they were so engaged, the expenditures in question are deductible under section 23 (a) (1) (A), *supra;* and if they were not so engaged, the expenditures are deductible under section 23 (a) (2), *supra.*

*Issue No. 4.*—Is petitioner Louise K. Hutchins entitled to deduct from her gross income for the year 1940 as a charitable contribution the amount of $1,593.70 which was the cost of certain radium which she gave to certain physicians for the benefit of the poor and needy? The answer to this question depends upon whether the contribution falls within the class Congress has designated as allowable deductions. The applicable statute is section 23 (o) of the Internal Revenue Code, as amended by section 224 of the Revenue Act of 1939.[4]

Petitioner contends that, in turning this radium over to the two physicians named in our findings, who agreed to use it only for the poor and needy and also agreed not to charge for their services, she thereby made a contribution to or for the use of a "trust" or a "fund" as those terms are used in the statute. In *Faulkner* v. *Commissioner*, 112 Fed. (2d) 987, the First Circuit, among other things, said:

\* \* \* The exemption of income devoted to charity was a liberalization of the law in the taxpayer's favor "begotten from motives of public policy" and "not to be narrowly construed". *Helvering* v. *Bliss*, 293 U. S. 144, 150, 151, 55 S. Ct. 17, 20, 21, 79 L. Ed. 246, 95 A. L. R. 207.

Petitioner's husband testified that:

The radium was to be used in connection with their treating of patients who were unable to pay for such service. It was not to be used on any one else, and

---

[4] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions :

\*　　\*　　\*　　\*　　\*　　\*　　\*

(o) CHARITABLE AND OTHER CONTRIBUTIONS.—In the case of an individual, contributions or gifts payment of which is made within the taxable year to or for the use of :

\*　　\*　　\*　　\*　　\*　　\*　　\*

(2) A corporation, trust, or community chest, fund or foundation, created or organized in the United States or in any possession thereof or under the law of the United States or of any State or Territory or of any possession of the United States, organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, and no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation ;

\*　　\*　　\*　　\*　　\*　　\*　　\*

to an amount which in all the above cases combined does not exceed 15 per centum of the taxpayer's net income as computed without the benefit of this subsection. Such contributions or gifts shall be allowable as deductions only if verified under rules and regulations prescribed by the Commissioner, with the approval of the Secretary.

they were not to try to collect a professional fee from those patients on which they used this radium.

Upon cross-examination petitioner's husband was asked if this arrangement with the doctors was in writing, and he answered:

No, sir; she made these arrangements herself and came to me and asked if I thought they would carry it out or should they have it in writing, and I told her if she knew the doctors and trusted them, it might be a smear on them to have them write that they would do these things.

We think an oral trust was created and that it was organized and operated exclusively for charitable purposes. The respondent makes no contention that if the amount in question is allowed petitioner's total contributions would exceed the 15 percent limitation. We hold that petitioner is entitled to deduct the amount in question. Cf *Marshall Field*, 26 B. T. A. 116, 124.

*Decisions will be entered under Rule 50.*