John Thomas Blake and Angelina Blake v. Commissioner.
Blake v. Commissioner
Docket No. 4804-67.
United States Tax Court
T.C. Memo 1970-117; 1970 Tax Ct. Memo LEXIS 239; 29 T.C.M. (CCH) 513; T.C.M. (RIA) 70117; May 19, 1970, Filed John Thomas Blake, pro se, 1303 Cordova N.W., Albuquerque, N. Mex., Marvin Scott, for the respondent. ATKINS
Memorandum Findings of Fact and Opinion ATKINS, Judge: The respondent determined a deficiency in income tax for the taxable year 1965 in the amount of $143.13. The petitioner alleges error in the respondent's determination disallowing a deduction of $726.90 claimed as a charitable contribution. With respect to this issue, the petitioner contends *240 that he has met the requirements of the Internal Revenue Code of 1954, and also questions the constitutionality of the disallowance. The respondent also made two other adjustments which are not questioned by the petitioner except on constitutional grounds. Findings of Fact Petitioners, John Thomas Blake and Angelina Blake, are husband and wife and were such during the taxable year 1965. At all material times and at the time of the filing of the petition herein they were residents of Albuquerque, New Mexico. They filed a joint Federal income tax return for the taxable year 1965 with the district director of internal revenue at Albuquerque. John Thomas Blake will hereinafter be referred to as the petitioner. Petitioner is a carpenter by trade and his wife is with Goodwill Industries. On their return petitioners claimed exemptions for three dependent children. About 1962 or 1963 the Word of Life Church (hereinafter sometimes referred to as the Church), which had been in existence under a different name since about 1957 or 1958, was incorporated under the laws of the state of New Mexico as a nonprofit organization. The charter of the Church was of limited duration, and sometime *241 prior to the taxable year 1965 it was allowed to lapse. At the time of its creation in 1957 or 1958, the Church was pastored by Lyle Smallridge. He was later succeeded by Carl Dahl. Petitioner first became associated with the Church in about 1958 or 1959. He became a deacon and then an elder of the Church, and in May 1965 he became its pastor, succeeding Carl Dahl, and retained 514 such position for the remainder of the taxable year 1965. Since about 1959 petitioner has been treasurer of the Church, in charge of all its financial affairs. He has been the custodian of all amounts received by way of contributions and has dispensed the money to pay its bills. During the taxable year 1965 there was maintainel at a local bank a checking account in the name of the Church. Petitioner and Carl Dahl (apparently only while he was still pastor) were the only ones authorized to draw checks on this account. Petitioner initially kept some financial records of Church transactions. However, in 1962 the Internal Revenue Service, in connection with another dispute, refused to accept such records as proof of contributions made. For that reason, and since petitioner did not consider that records *242 were necessary from the standpoint of the Church, he kept no formal records of the Church's financial transactions. The only records pertaining to the Church's financial matters during 1965 consisted of canceled checks given for some of its expenses. The membership of the Church has varied considerably during its existence. The attendance at its meetings has ranged from as many as 100 to as few as 2 or 3, in addition to petitioner and his wife and their 3 children. In 1965, after petitioner became pastor, regular attendance was about 5 or 6, in addition to petitioner and his family. Occasionally additional persons would attend. The Church continued to operate in 1966 under the name of The Alpha and The Omega until it ceased to be active in December 1966. The Church was independent, never having been associated in any way with any national church group. It had no sacraments in the formal sense of the word as does, for example, the Roman Catholic Church. Its services consisted of the laying on of hands to satisfy all needs, such as healing, and praying for the sick and any other needs. The Church had no school for teaching the ministry. Petitioner was ordained a minister of the Church *243 when 4 or 5 other ministers ordained in the Church laid their hands upon him and presented him with a paper stating that he was ordained. The Church never owned a building, always renting its quarters. During 1965 it rented the main part of a building, a space of about 28 feet X 30 feet, for $60 per month. The landlady was unwilling to accept payment by check and, therefore, petitioner kept cash on hand to pay the rent. The remaining expenses of the Church, consisting of payments for its organ, piano, gas, lights, and water, were paid by checks drawn on the Church bank account. During the taxable year 1965 contributions to the Church by members other than the petitioner amounted to $5 or $6 per week. The petitioner made it a practice to set aside for the Church at least 10 percent of any paycheck he received. His contributions ranged from $10 to $20 per week. However, at some time during the latter part of 1965 the petitioner was unemployed. In the latter part of 1965 the contributions received by the Church were not sufficient to pay the building rent and the Church was sued. When petitioner gained employment he contributed $180 in cash from his salary to pay the rent. The total *244 of petitioner's cash contributions to the Church in 1965 was $726.90. During the period that petitioner was pastor of the Church in the taxable year 1965 he received no salary from the Church, and none of the contributions made to the Church were received by him for his personal benefit. All the monies received by the petitioner as contributions to the Church in 1965 were used exclusively for the purpose of paying the bills of the Church. The Church has never requested the Internal Revenue Service to issue a ruling that it is an exempt organization. In the joint income tax return for the taxable year 1965, the petitioners reported adjusted gross income of $7,053.34, which included wages upon which taxes of $599.80 were withheld. Therein they claimed a deduction of $726.90 as a charitable contribution to the Church. Therein they also claimed as a loss deduction $50 on account of theft of tools and $257.67 as cost of tools, clothes, and "income tax preparation." In the notice of deficiency the respondent disallowed the claimed $50 deduction and $150.32 of the claimed $257.67 deduction. He also disallowed the claimed deduction of $726.90 with the explanation that petitioners had *245 not substantiated the amount of the contribution or that the Word of Life Church was a qualified charitable contribution donee. The Word of Life Church was, during the taxable year 1965, organized and 515 operated exclusively for religious purposes, and no part of its net earnings inured to the benefit of any private shareholder or individual. Opinion The respondent contends that the petitioners have not established that they are entitled, under section 170 of the Internal Revenue Code of 1954, [1] to the deduction claimed as contributions to the Word of Life Church. On brief he asserts that the petitioners have failed to establish that they made the contributions claimed to have been made, and have also failed to establish that the Word of Life Church was a "corporation, trust, or community chest, fund, or foundation," that it was organized and operated exclusively for religious or charitable purposes, and that its funds did not inure to their, or any other's, personal benefit. In support thereof he points out that the petitioners have not placed in evidence a charter or other organizational document and that it cannot be determined what the intended *246 activities of the Church were, what use would be made of monies contributed to it, and what disposition would be made of its property on dissolution. He further states that the Church was the personal venture of the petitioner; that he alone was "the organization." He does not contend that any substantial part of the activities consisted of carrying on propaganda or otherwise attempting to influence legislation. *247 The petitioner was not represented by counsel and the record is not as complete as might be desired. However, we are of the opinion that the testimony of the petitioners is sufficient to establish their right to the claimed deduction. It is true that no charter or other document was presented, and so far as we know it had no governing document in 1965. The record shows that at one time the Church had been organized as a corporation and that, although its charter was allowed to lapse, the same or similar activities continued to be carried on by a group, albeit a small group, thereafter and during the taxable year 1965. Such group rented a building at which they held meetings, and had a pastor, a treasurer, and a bank account in the name of the Church. It is our conclusion, therefore, that there was here a group of individuals acting in cooperation in the pursuit of a common purpose which constituted an association and which in turn, under the Internal Revenue Code, is to be treated as a corporation. See section 7701 of the Code. See also Bok v. McCaughn, (C.A. 3) 42 F. 2d 616; Edith A. Wolf, 40 B.T.A. 1232; and Pierce Estates, Inc., 3 T.C. 875. *248 We accordingly cannot accept the view of the respondent that the World of Life Church was merely the personal endeavor of the petitioner. While there is no charter or other document setting forth the purpose for which the Word of Life Church was organized, this is not fatal to the petitioner's case. It has been held that the question of purpose is one of fact to be determined from an examination of all the evidence, including the activities carried on. See Forest Press, Inc. 9 22 T.C. 265; Pierce Estates, Inc., supra; Elisian Guild, Inc. v. United States, (C.A. 1) 412 F. 2d 121; and Samuel Friedland Foundation v. United States, (D.C.N.J.) 144 F. Supp. 74. We have set forth in the Findings of Fact the activities carried on and are satisfied that such were the only activities carried on or intended to be carried on, and have therefore 516 concluded that the Church was organized and operated exclusively for religious purposes. [2] In this connection we note that all money received by the petitioner on behalf of the Church was spent for its current expenses and therefore there was no possibility that, in the event of dissolution, *249 there would be any funds which might be applied to any noncharitable purpose. See Morey v. Riddell, ( D.C.S.D. Cal.) 205 F. Supp. 918. We are also satisfied that no part of the net earnings of the Church inured to the benefit of the petitioners or any other individual. Furthermore, the testimony establishes, and we have found as a fact, that the petitioner did contribute to the Church the amount claimed. In view of the foregoing, we hold that the respondent erred in disallowing the claimed deduction of $726.90. It is therefore unnecessary to consider certain constitutional arguments raised by the petitioners with respect to the respondent's disallowance of the claimed charitable contributions. In regard to the other two adjustments made by respondent, petitioners concede their correctness under the Internal Revenue Code, but *250 apparently would have us expunge the full deficiency determined by the respondent on the grounds that certain of their constitutional rights have been violated. They first assert that the requirement that they file an income tax return violates that portion of the Fifth Amendment to the Constitution of the United States which provides "nor shall any person * * * be compelled in any criminal case to be a witness against himself * * *." There is no merit in this contention. Obviously the petitioners fail to understand the scope of this provision. [3] In United States v. Sullivan 274 U.S. 259, the Supreme Court rejected the contention that the mere requirement of filing a return violates the constitutional provision against self-incrimination.
*251 Petitioners also contend that the statute creating this Court, in not providing for jury trials, violates that portion of the Seventh Amendment to the Constitution which provides that "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved * * *." Here again there is not merit in the contention. In Wickwire v. Reinecke, 275 U.S. 101, the Supreme Court held that there is no constitutional right to a jury trial in tax matters. Petitioners further contend that the wagewithholding requirements of the Internal Revenue Code violate the Thirteenth Amendment by subjecting their employers to involuntary servitude. Even if such contention were correct it has no application here. One does not have standing to raise the Constitutional rights of others. See Tileston v. Ullman, 318 U.S. 44. The respondent's determination of the deficiency is approved except as stated hereinabove. Decision will be entered under Rule 50. Footnotes
1. Section 170 of the Code provides in part as follows: (a) Allowance of Deduction. - (1) General rule. - There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year. A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary or his delegate. * * * (b) Limitations. - (1) Individuals. - In the case of an individual the deduction provided in subsection (a) shall be limited as provided in subparagraphs (A), (B), (C), and (D). * * * (B) General limitation. - The total deductions under subsection (a) for any taxable year shall not exceed 20 percent of the taxpayer's adjusted gross income * * *. * * * (c) Charitable Contribution Defined. - For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of - * * * (2) A corporation, trust, or community chest, fund, or foundation - (A) created or organized in the United States or in any possession thereof, or under the law of the United States, any State or Territory, the District of Columbia, or any possession of the United States; (B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes or for the prevention of cruelty to children or animals; (C) no part of the net earnings of which inures to the benefit of any private shareholder or individual; and (D) no substantial part of the activities of which is carrying on propaganda, or otherwise attempting to influence legislation.↩
2. It is not necessary to here determine whether the Word of Life Church would qualify as a church for purposes of the special rule set forth in section 170(b)(1)(A)↩ of the Code with regard to charitable contributions to churches, since the contribution claimed by the petitioners does not exceed 20 percent of their adjusted gross income.
3. On brief they state that "the very act of submitting an income tax form incriminates that person to the extent that he has confessed to having earned $600.00 or more. The I.R.C. has made it a criminal offense not to submit an income tax form if said person earns $600.00 or more. Therefore the income tax form that is filed is self-incriminating on the very face thereof. Furthermore after having filled out said income tax form, that person has incriminated himself again by making himself libal [sic] to taxes which we say can be likened unto a penalty for having earned money * * *."↩